## Case No. 15,056.

### UNITED STATES v. ERIE RY. CO.

[9 Ben. 67; 1 24 Int. Rev. Rec. 76.]

District Court, S. D. New York. March, 1877.2

INCOME TAX—INTEREST ON CORPORATION BONDS—
ALIEN OWNERSHIP—PENALTY.

1. Interest on bonds of a corporation held by non-resident aliens is not taxable by the United States, under section 122 of the act of June 30, 1864 (13 Stat. 284), as amended by section 9 of the act of July 13, 1866 (14 Stat. 138).

2. Michigan Cent. R. Co. v. Slack [Case No. 9,527a], dissented from.

3. Only one penalty is recoverable for all failures to make returns for taxation, under said statute, prior to the commencement of a suit.

[Cited in Ex parte Snow, 120 U. S. 286, 7 Sup. Ct. 562.]

At law.

Roger M. Sherman, Asst. Dist. Atty.

William D. Shipman and Henry L. Burnett, for defendant.

BLATCHFORD, District Judge. This is a suit brought by the United States against the Erie Railway Company, to recover taxes alleged to be due to the plaintiffs on certain interest coupons paid by the defendant on bonds issued by the defendant, which payments were made in the years 1866, 1867, 1868 and 1869, and also to recover certain penalties alleged to be due to the plaintiffs for the failure of the defendant to make returns of the amount of said taxes. The suit is founded on section 122 of the act of June 30, 1864 (13 Stat. 284), as amended by section 9 of the act of July 13, 1866 (14 Stat. 138). Such section, as so amended, reads as follows, the parts of the section as amended which are not found in the original section being put in parentheses, and the parts of the original section which are not found in the amended section being put in italics: "Any railroad, canal, turnpike, canal navigation, or slack-water company, indebted for any money for which bonds or other evidence of

¹ [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

² [Affirmed by circuit court. Judgment of circuit court reversed in supreme court. 106 U. S. 327, 1 Sup. Ct. 223.]

indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip or money, due or payable to its stockholders (including non-residents, whether citizens or aliens), as part of the earnings, profits, income or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, shall be subject to and pay a *duty* (tax) of five per centum on the amount of all such interest or coupons, dividends or profits, whenever (and wherever) the same shall be payable (and to whatsoever party or person the same may be payable, including non-residents, whether citizens or aliens); and said companies are hereby authorized to deduct and withhold from all payments on account of any interest, or coupons, and dividends, due and payable as aforesaid, the *duty* (tax) of five per centum; and the payment of the amount of said *duty* (tax) so deducted from the interest, or coupons, or dividends, and certified by the president or treasurer of said company, shall discharge said company from that amount of the dividend, or interest, or coupon on the bonds or other evidences of their indebtedness so held by any person or party whatever, except where said companies may have contracted otherwise. And a list or return shall be made and rendered to the assessor or assistant assessor, *in duplicate, and one of said lists or returns shall be transmitted and the duty paid to the commissioner of internal revenue within thirty days after the time when* (on or before the tenth day of the month following that in which) said interest, coupons or dividends become due and payable, and as often as every six months; and said list or return shall contain a true and faithful account of the amount of the *duty* (tax), and there shall be annexed thereto a declaration of the president or treasurer of the company, under oath or affirmation, in form and manner as may be prescribed by the commissioner of internal revenue, that the same contains a true and faithful account of said *duty* (tax). And for any default in making or rendering such list or return, with the declaration annexed, or of the payment of the *duty* (tax) as aforesaid, the company making such default shall forfeit, as a penalty, the sum of one thousand dollars; and, in case of any default in making or rendering said list or return, or of the payment of the *duty* (tax) or any part thereof, as aforesaid, the assessment and collection of the *duty* (tax) and penalty shall be made according to the provisions of law in other cases of neglect or refusal: (Provided, that whenever any of the companies mentioned in this section shall be unable to pay the interest on their indebtedness, and shall in fact fail to pay such interest, in such cases the tax levied by this section shall not be paid to the

United States until said company resume the payment of interest on their indebtedness)."

Prior to September 1, 1866, the defendant had issued and sold, as hereinafter stated, sterling coupon bonds, dated September 1, 1865, the principal of which was payable ten years after date, and the principal and interest of which were, by the terms of said bonds and coupons, payable in London, England, at the office of J. S. Morgan & Co., bankers, of said London, to the amount of £800,000 sterling. After the 1st of March, 1868, and before the 1st of September, 1868, the defendant issued and sold of the same class of bonds, £200,000 sterling, the principal and interest of which were payable at the same place as the principal and interest of the £800,000 above stated. The rate of interest on all of said bonds was six per cent. per annum, payable semi-annually, on the first days of March and September of each year. Said bonds, with the coupons thereto attached, were all sold directly to foreign bankers, who had their banking houses and principal places of business in said London, and were resold by them to their customers in Europe. During all of the years 1866, 1867, 1868 and 1869, all of said bonds and coupons were held and owned by non-resident aliens and not by citizens of the United States, except bonds to the amount of £20,000, and the coupons thereto belonging, which latter bonds, and no more, were held and owned by a citizen or citizens of the United States residing in Europe. The amount of the interest, as the same fell due, on all of the said bonds, was provided for and sent forward by the defendant, in one sum, to said J. S. Morgan & Co., before the dates at which the same fell due, and it was paid at the respective dates at which it fell due, by said J. S. Morgan & Co., at their banking house in London, to the holders of the said bonds and coupons. The total amount of interest so paid, from and including September 1, 1866, to and including September 1, 1869, was £186,000 sterling, the amount of the tax on which, at the rate of five per cent., would be £9,300 sterling. Included therein is the amount of interest paid on the £20,000 sterling of bonds held and owned by a citizen or citizens of the United States, and the amount of tax thereon, such interest being £4,200 sterling, and such tax being £210 sterling. The defendant made no returns to the assessor, or to any other officer of the internal revenue of the United States, of the payment of the said interest, or of any part thereof, nor did the defendant pay any tax to the United States on said interest or any part thereof, nor did the defendant withhold said tax or any part thereof from the amount of said interest, but the defendant paid the full amount of said interest to the holders of said bonds. No assessment was ever made on the defendant for any portion of said tax, nor was any demand ever made on the defendant for the payment of the same to the United States, until December 31, 1872. The defendant has not paid to the plaintiffs any penalty for failure to make return of the payment of said interest.

The foregoing facts are agreed upon by the parties, in writing, and the case has been tried by the court, without a jury. The main question in the case is, whether the defendant is liable to pay to the United States the five per cent. tax, being £9,090 sterling, on the £181,800 sterling of interest which it paid to non-resident aliens.

Under the decisions of the supreme court in U. S. v. Railroad Co., 17 Wall. [84 U. S.] 322, and Stockdale v. Insurance Cos., 20 Wall. [87 U. S.] 323, it must be regarded as settled, in the construction of the statute in question, that, when interest is payable by a corporation to any bondholder who, for any special reason, is exempt from the tax on such interest, then the corporation is not liable to pay such tax. The tax is held to be a tax on the bondholder, in effect and in substance, the corporation being the agent of the government for collecting and paying over the tax. It is really a tax on the income of the bondholder, and is a part of the income tax provided for by sections 116 to 123 of the act of 1864 and the amendments thereto. In U. S. v. Railroad Co., above cited, it was held that the tax imposed by the statute in question could not be collected by the United States from a railroad corporation, in respect of interest payable by it on bonds issued by it and owned by the city of Baltimore, on the ground that that city, being a municipal corporation, and a portion of the sovereign power of the state of Maryland, was not subject to taxation by congress upon its municipal revenues. The tax was not regarded as a tax on the corporation, as such, or on its revenues, but was held to be a tax on the creditors of the corporation, and the corporation was held not to be liable to the tax unless the creditor was liable. The same case also determines, that, although the language of the statute in question may be broad enough to include, in terms, a tax on interest payable to a party or person not subject to taxation by congress, yet it will not be construed as applicable to such a party or person. This view is affirmed in Stockdale v. Insurance Cos., above cited.

Are the non-resident alien holders of the bonds in question in this case, subject to taxation in respect of the interest payable and paid on their bonds? In Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 262, it was held, under the act of 1864, before the amendment of 1866, that congress did not intend to impose the five per cent. tax, as an income tax, on non-resident aliens; and that the scheme of the statute, in authorizing the company to deduct from the interest payable the amount of the tax thereon, was merely a mode of collecting that part of the income tax. But it is apparent that congress, in the amendment of 1866, intended to have the tax extend to

interest payable to non-resident aliens. In doing so, it has undertaken to lay a tax, and an income tax, on non-resident aliens, in respect of such interest. Can it lawfully do so?

In the case of State Tax on Foreign-Held Bonds, 15 Wall. [82 U. S.] 300, the state of Pennsylvania had passed an act requiring every company incorporated by Pennsylvania, doing business therein, which pays interest to its bondholders, to retain from said bondholders, before paying such interest, a tax of five per centum on every dollar of interest so paid, and to pay the same to the state treasurer for the use of the state. The state court sustained the validity of the tax. The supreme court held, that bonds of corporations, owned by non-residents of the state, were not property anywhere but in the hands of their owners; that they were thus beyond the jurisdiction of the taxing power of the state; and that the law which required the corporation to retain five per cent. of the interest due to the non-resident bondholders was not a legitimate exercise of the taxing power, because it was a tax on property beyond the jurisdiction of the state. The tax laid in that case was quite as much a tax on the corporation, or on moneys in the hands of the corporation, as is the tax now under consideration. But the supreme court looked through the form to the substance, and held that the tax was not a tax on the corporation, or on the property of the corporation, or on property within the jurisdiction of the state, or on the money in the hands of the corporation, but was a tax on the debt, which was not property of the debtor, but was property in the hands of the bondholders. The congress of the United States can have no greater power to tax persons or property not within the jurisdiction of the United States, than a state has to tax persons and property not within its jurisdiction. By the tax in question, it has taxed either the non-resident alien or his property out of the jurisdiction of the United States. Probably, the view which led to the amendment of 1866 was, that the tax was a tax on the corporation, or on the earnings, profits, income or gains of the corporation, or on money in the hands of the corporation, belonging to it. The form of the enactment is, that the company shall be subject to and pay the tax on the amount of the interest it has contracted to pay, when such interest shall be payable, and, of course, before such interest shall be paid. But, as the tax in this case is really a tax on the property and income of non-resident aliens, when such property is not within the jurisdiction of the United States, and is thus a tax on the non-resident aliens themselves, it is a tax which cannot be upheld.

In arriving at this conclusion, I dissent from the reasoning and decision of the circuit court for the district of Massachusetts,

held by Judge Clark, in the case of Michigan Cent. R. Co. v. Slack [Case No. 9,527a]. In that case, the court, while holding that taxation cannot extend beyond the jurisdiction of the taxing power, and that the objects of taxation must be within the territorial limits of the taxing power, arrived at the conclusion, that, under the statute in question, the interest, when it became due and payable, was either the property of the corporation, and thus rightfully taxable, or the property of the bondholder, and thus taxable because in the shape of funds within the jurisdiction of the taxing power and under its control, the tax attaching to the interest, as funds of the bondholder in the hands of the corporation. These views seem to me to run counter to the decisions of the supreme court in U. S. v. Railroad Co., and Stockdale v. Insurance Cos., above cited. The latter case is not referred to by Judge Clark in his opinion.

The plaintiffs are, therefore, not entitled to recover the tax on the £181,800 sterling of interest which it paid to non-residents and aliens, or any penalty thereon. Their right to recover the £210 sterling tax on the £4,200 sterling of interest is admitted. The defendant contends that this amount is to be recovered at its value in legal tender currency at the date of the trial or judgment. But I am of opinion that, under sections 3 and 4 of the act of March 10, 1866 (14 Stat. 5), as amended by section 9 bis of the act of July 13, 1866 (Id. 147, now section 3178 of the Revised Statutes), the plaintiffs are entitled to recover the tax at its value in legal tender currency at the several dates when the interest was payable.

In accordance with the decision of this court in the case of U. S. v. New York Guaranty & Indemnity Co. [Case No. 15,872], Dec. 16, 1875, only one penalty is recoverable for all defaults prior to the commencement of the suit.

NOTE. The United States carried this case, by writ of error, to the circuit court, where it was heard before Chief Justice Waite. His decision was as follows· "I fully concur with the learned district judge in the view he has taken of this case. The tax for the recovery of which the suit was brought was a tax upon the owner of the bonds and not upon the defendant. It was not a tax, in the nature of a tax in rem, upon the bond itself, but upon the income of the owner of the bond, derived from that particular piece of property. The foreign owner of these bonds was not, in any respect, subject to the jurisdiction of the United States, neither was this portion of his income. His debtor was, and so was the money of his debtor, but the money of his debtor did not become a part of his income until it was paid to him, and, in this case, the payment was made outside of the United States, in accordance with the obligations of the contract which he held. The power of the United States is limited to persons, property and business within their jurisdiction, as much as that of a state is limited to the same subjects within its jurisdiction. State Tax on Foreign-Held Bonds, 15 Wall. [82 U. S.] 300. The default of the defendant in making its returns was a continuing

one. Only one penalty, therefore, is recoverable. The judgment of the district court is affirmed."

But see Railroad Co. v. Collector, 100 U. S. 595.

[The judgment of the circuit court was reversed in error by the supreme court. 106 U. S. 327, 1 Sup. Ct. 223. At a later day a petition for rehearing was denied. 107 U. S. 1, 2 Sup. Ct. 83.]