# IN RE SNOW

APPEAL FROM THE THIRD JUDICIAL DISTRICT COURT, SALT LAKE COUNTY, UTAH.

Argued January 21, 1887. — Decided February 7, 1887.

Where a District Court in the Territory of Utah refuses to issue a writ of *habeas corpus* involving the question of personal freedom, an appeal lies to this court from its order and judgment of refusal.

The offence of cohabiting with more than one woman, created by § 3 of the act of Congress of March 22, 1882, c. 47, 22 Stat. 31, is a continuous offence, and not one consisting of an isolated act.

Opinion of the Court.

S. was convicted separately in a District Court of the Territory of Utah, on three indictments under that section, covering together a continuous period of time, each covering a different part, but the three parts being continuous, the indictments being found at the same time, by the same grand jury, on one oath and one examination, of the same witnesses, covering the whole continuous time. One judgment was · entered on the three convictions. It first imposed a term of imprisonment and a fine. It next imposed two further successive terms of imprisonment, each to begin at the expiration of the last preceding sentence and judgment, with two further fines. It set forth the time embraced by each indictment and specified each of the three punishments as being imposed in respect of a specified one of the indictments. On a petition to a District Court of the Territory, by the defendant, for a writ of *habeas corpus,* setting forth that he had been imprisoned under the judgment for more than the term first imposed, and had paid the fine first imposed, and that the other two punishments were in excess of the authority of the trial court, the writ was refused. On appeal to this court; *Held,*

(1) There was but one entire offence for the continuous time.

(2) The trial court had no jurisdiction to inflict a punishment in respect of more than one of the convictions.

(3) As the want of jurisdiction appeared on the face of the proceedings, the defendant could be released from imprisonment on a *habeas corpus.*

(4) The order and judgment of the court below must be reversed, and the case be remanded to that court, with a direction to grant the writ of *habeas corpus* prayed for.

THIS was an appeal from an order of court refusing an application for a writ of *habeas corpus.* The case is stated in the opinion of the court.

*Mr. George Ticknor Curtis* and *Mr. Franklin S. Richards* for appellant.

*Mr. Assistant Attorney General Maury* for the United States.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

Section 3 of the act of Congress approved March 22, 1882, c. 47, 22 Stat. 31, provides as follows : "Sec. 3. That if any male person, in a territory or other place over which the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor,

and on conviction thereof shall be punished by a fine of not more than three hundred dollars, or by imprisonment for not more than six months, or by both said punishments, in the discretion of the court."

The grand jury of the United States for November Term, 1885, in the District Court of the First Judicial District in and for the Territory of Utah, on the 5th of December, 1885, presented and filed in that court, in open court, three several indictments, in the name of the United States, against Lorenzo Snow, each of them found December 2, 1885, designated as No. 741, No. 742, and No. 743. Each of them was founded on the foregoing statute, and they were alike in all respects except that each covered a different period of time. No. 741 alleged that Snow, on the 1st of January, 1883, "at the county of Box Elder, in the said district, territory aforesaid, and within the jurisdiction of this court, and on divers other days and times thereafter, and continuously between said first day of January, A.D. 1883, and the thirty-first day of December, A.D. 1883, did then and there unlawfully live and cohabit with more than one woman, to wit, with Adeline Snow, Sarah Snow, Harriet Snow, Eleanor Snow, Mary H. Snow, Phœbe W. Snow, and Minnie Jensen Snow, and during all the period aforesaid, at the county aforesaid, he, the said Lorenzo Snow, did unlawfully claim, live, and cohabit with all of said women as his wives." No. 742 alleged that Snow, on the 1st of January, 1885, "and on divers other days and times thereafter, and continuously between said first day of January, A.D. 1885, and the first day of December, A.D. 1885, did then and there unlawfully live and cohabit with more than one woman, to wit, with" the seven persons above named, "and during all the period aforesaid" "did unlawfully claim, live, and cohabit with all of said women as his wives." No. 743 alleged that Snow, on the 1st of January, 1884, "and on divers other days and times thereafter, and continuously between said first day of January, A.D. 1884, and the thirty-first day of December, A.D. 1884, did then and there unlawfully live and cohabit with more than one woman, to wit, with" the seven persons above named, "and during all the period aforesaid" "did un-

lawfully claim, live, and cohabit with all of said women as his wives."

At the time of filing each indictment it was properly indorsed "a true bill, etc., and with the names of the witnesses." The same sixteen witnesses were examined before the grand jury, "on one oath and one examination, as to the alleged offence during the entire time mentioned in all of said three indictments, and" they were found "upon the testimony of witnesses given on an examination covering the whole time specified in said three indictments." On the 11th of December, 1885, the defendant was arraigned on each of the three indictments, and interposed a demurrer to each, which being overruled, he pleaded not guilty to each.

Indictment No. 742 was first tried, covering the period from and including January 1, 1885, to December 1, 1885. On the 31st of December, 1885, a verdict of guilty was rendered, and the court fixed the 16th of January, 1886, as the time for passing sentence.

Indictment 743 was next tried, covering the period from and including January 1, 1884, to December 31, 1884. The defendant orally put in an additional plea in bar, setting up his prior conviction on indictment No. 742; and that the offence charged in all of the indictments was one continuous offence and the same offence, and not divisible. On an oral demurrer to this plea, the demurrer was sustained. On the trial by the jury, a verdict of guilty was rendered on the 5th of January, 1886, and the court fixed the 16th of January, 1886, as the time for passing sentence.

Indictment No. 741 was next tried, covering the period from and including January 1, 1883, to December 31, 1883. The defendant orally put in an additional plea in bar, setting up his prior convictions on indictments Nos. 742 and 743; and that the offence charged in all of the indictments was one continuous offence, and the same offence, and not divisible. On an oral demurrer to this plea, the demurrer was sustained. On the trial by the jury, a verdict of guilty was rendered on the 5th of January, 1886, and the court fixed the 16th of January, 1886, as the time for passing sentence.

The record of the court states that on the last-named day the following proceedings took place, in open court:

"(Title of court and cause.)

"The defendant and his counsel, F. S. Richards, and C. C. Richards, Esq'rs (of counsel) came into court. The defendant was duly informed of the nature of the indictments found against him on the 5th day of December, 1885, by the grand jury of this court, for the crime of unlawful cohabitation, committed as stated in said indictments, and during the time, as follows, viz.: Indictment No. 741, between the first day of January, A.D. 1883, and the thirty-first day of December, A.D. 1883; indictment No. 742, between the first day of January, A.D. 1885, and the first day of December, A.D. 1885; indictment No. 743, between the first day of January, A.D. 1884, and the thirty-first day of December, A.D. 1884; of his arraignment and plea of not guilty as charged in said three indictments, on the sixteenth day of December, A.D. 1885; of his trial and the verdicts of the juries; indictment No. 742, 'Guilty as charged in the indictment,' on December 31, 1885; indictment No. 743, 'Guilty as charged in the indictment,' on January 5, 1886; indictment No. 741, 'Guilty as charged in the indictment,' on January 5, 1886.

"The said defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him, to which he replied that he had none; and no sufficient cause being shown or appearing to the court, thereupon the court renders its judgment, that whereas said Lorenzo Snow having been duly convicted in this court of the crime of unlawful cohabitation:

"It is ordered, adjudged, and decreed, that said Lorenzo Snow be imprisoned in the penitentiary of the Territory of Utah for a period of six months, and that he do forfeit and pay to the United States a fine of three hundred dollars and the costs of this prosecution, and that he do stand committed into the custody of the United States marshal for said territory until such fine and costs be paid in full. (As to indictment No. 741.)

" And it is further ordered, adjudged, and decreed, that at the expiration of the sentence and judgment rendered on said indictment No. 741, said Lorenzo Snow be imprisoned in the penitentiary of Utah Territory for a period of six months, and that he do forfeit and pay to the United States the sum of three hundred dollars and the costs of this prosecution, and that he do stand committed into the custody of the United States marshal for said territory until such fine and costs be paid in full. (As to indictment No. 742.)

" And it is further ordered, adjudged, and decreed, that at the expiration of the sentence and judgment, as last above rendered, on said indictment No. 742, said Lorenzo Snow be imprisoned in the penitentiary of Utah Territory for a period of six months, and that he do forfeit and pay to the United States the sum of three hundred dollars and the costs of this prosecution, and that he do stand committed into the custody of the United States marshal for said territory until such fine and costs be paid in full. (As to indictment No. 743.)

" The said defendant, Lorenzo Snow, is remanded into the custody of the United States marshal for Utah Territory, to be by him delivered into the custody of the warden or other proper officer in charge of said penitentiary; and said warden or other proper officer of said penitentiary is hereby commanded to receive of and from the said United States marshal, him, the said Lorenzo Snow, convicted and sentenced as aforesaid, and him, the said Lorenzo Snow, keep and imprison in said penitentiary for the periods as in this judgment ordered and specified.

" ORLANDO W. POWERS, *Judge.*"

On the 22d of October, 1886, the defendant filed in the District Court of the Third Judicial District of the Territory of Utah a petition setting forth that he is a prisoner confined in the penitentiary of the Territory of Utah, " by virtue of the warrant, judgment, and proceedings of record, including three indictments against your petitioner, his arraignment thereon, and pleas thereto, respectively, as well as demurrers to such pleas, decisions thereof, and verdicts of the jury,

being the record of said matters in the District Court of the
First Judicial District of the Territory of Utah," copies of all
which papers, sixteen in number, were annexed to the petition;
that, under said judgment, and in execution thereof, he had been
imprisoned in said penitentiary for more than six months, to
wit, continuously since the 12th day of March, 1886, and had
paid $300 in satisfaction of the fine adjudged against him, and
"all the costs awarded and assessed against him on said
prosecution;" that his imprisonment is illegal in that "the
court had no jurisdiction to pass judgment" against him
"upon more than one of the indictments or records referred to
in its said judgment, for the reason that the offence therein
set out is the same as that contained and set out in each of
the other said indictments and records, and the maximum
punishment which the court had authority to impose was
six months' imprisonment and a fine of three hundred dol-
lars;" and "that by his said imprisonment your petitioner is
being punished twice for one and the same offence." The
prayer is for a writ of *habeas corpus*, to the end that the
petitioner may be discharged from custody.

On a hearing on the petition the following order was
made by the court, on the 23d of October, 1886:

"The petition of Lorenzo Snow for a writ of *habeas corpus*
having been presented to the court, with the exhibits attached
as a part thereof, and the court having fully considered the
application and petition and the exhibits attached, finds that
the facts alleged and shown by the petition and exhibits
are insufficient to authorize the issuance of the writ; and the
court being of the opinion, from the allegations and facts
stated in the petition and exhibits, that, if the writ be granted
and a hearing given, the petitioner could not be discharged
from custody, it is ordered and adjudged by the court that the
said application for a writ of *habeas corpus* be, and the same
is hereby, refused; to which ruling and refusal applicant, by
his counsel, excepts."

From this order and judgment the petitioner has appealed
to this court.

There can be no doubt that the action of the District Court.

as set forth in its order and judgment refusing to issue the writ, was, so far as an appeal is concerned, equivalent to a refusal to discharge the petitioner on a hearing on the return to a writ; and that, under § 1909 of the Revised Statutes, an appeal lies to this court from that order and judgment.

It is contended for the United States, that, as the court which tried the indictments had jurisdiction over the offences charged in them, it had jurisdiction to determine the questions raised by the demurrers to the oral pleas in bar in the cases secondly and thirdly tried; that it tried those questions; that those questions are the same which are raised in the present proceeding; that they cannot be reviewed on *habeas corpus* by any court; and that they could only be reëxamined here on a writ of error, if one were authorized. For these propositions the case of *Ex parte Bigelow*, 113 U. S. 328, is cited. But, for the reasons hereafter stated, we are of opinion that the decision in that case does not apply to the present one.

The offence of cohabiting with more than one woman, in the sense of the section of the statute on which the indictments were founded, may be committed by a man by living in the same house with two women whom he had theretofore acknowledged as his wives, and eating at their respective tables, and holding them out to the world by his language or conduct, or both, as his wives, though he may not occupy the same bed or sleep in the same room with them, or either of them, or have sexual intercourse with either of them. The offence of cohabitation, in the sense of this statute, is committed if there is a living or dwelling together as husband and wife. It is, inherently, a continuous offence, having duration; and not an offence consisting of an isolated act. That it was intended in that sense in these indictments is shown by the fact that in each the charge laid is that the defendant did on the day named and "thereafter and continuously," for the time specified, "live and cohabit with more than one woman, to wit, with" the seven women named, and "during all the period aforesaid" "did unlawfully claim, live and cohabit with all of said women as his wives." Thus, in each indict-

ment, the offence is laid as a continuing one, and a single one, for all the time covered by the indictment; and, taking the three indictments together, there is charged a continuing offence for the entire time covered by all three of the indictments. There was but a single offence committed prior to the time the indictments were found. This appears on the face of the judgment. It refers to the indictments as found "for the crime of unlawful cohabitation committed" "during the time" stated, divided into three periods, according to each indictment. For so much of the offence as covered each of these periods the defendant is, according to the judgment, to be imprisoned for six months and to pay a fine of $300. The division of the two years and eleven months is wholly arbitrary. On the same principle there might have been an indictment covering each of the thirty-five months, with imprisonment for seventeen years and a half and fines amounting to $10,500, or even an indictment covering every week, with imprisonment for seventy-four years and fines amounting to $44,400; and so on, *ad infinitum*, for smaller periods of time. It is to prevent such an application of penal laws, that the rule has obtained that a continuing offence of the character of the one in this case can be committed but once, for the purposes of indictment or prosecution, prior to the time the prosecution is instituted. Here each indictment charged unlawful cohabitation with the same seven women; all the indictments were found at the same time, by the same grand jury, and on the testimony of the same witnesses, covering a continuous period of thirty-five months; and it was the mere will of the grand jury which divided the time among three indictments, and stopped short of dividing it among thirty-five, or one hundred and fifty-two, or even more. It was quite in consonance with this action, that the prosecuting officer tried the indictments in the inverse order of the time to which each related, that for 1885 first, that for 1884 next, and that for 1883 last. Hence the defendant could not, on any trial, plead or show that he had before been tried on an indictment in respect to a period of time antedating that laid in the indictment on trial. Then, after the verdicts, there was

not a separate judgment in each case; but only one judgment in form was rendered for all the cases. The judgment says, on its face, that the proper officer of the penitentiary is to imprison the defendant therein "for the periods as in this judgment ordered and specified," that is, for three successive periods of six months each, the first period to apply to the indictment thirdly tried; the second period to apply to the indictment first tried, and to begin when the sentence and judgment on the indictment thirdly tried should expire; and the third period to apply to the indictment secondly tried, and to begin when the sentence and judgment on the indictment secondly tried should expire.

No case is cited where what has been done in the present case has been held to be lawful. But the uniform current of authority is to the contrary, both in England and in the United States.

A leading case on the subject in England is *Crepps* v. *Durden*, Cowper, 640. In that case the statute, 29 Car. 2, c. 7, provided "that no tradesman or other person shall do or exercise any worldly labor, business, or work of their ordinary calling on the Lord's day, works of necessity and charity only excepted." A penalty of five shillings was affixed to each offence, and it was made cognizable by a justice of the peace. Crepps, a baker, was convicted before Durden, a justice, by four separate convictions, "of selling small hot loaves of bread, the same not being any work of charity, on the same day, being Sunday," in violation of that statute. Durden issued four warrants, one on each conviction, to officers, who, under them, levied four penalties, of five shillings each, on the goods of Crepps. The latter sued Durden and the others, in trespass, in the King's Bench, in 1777, and had a verdict before Lord Mansfield, for three sums of five shillings each, subject to the opinion of the court. The first question raised was whether, in the action of trespass, and before the convictions were quashed, their legality could be objected to; and, next, whether the levy under the last three warrants could be justified. It was contended for the plaintiff that the last three convictions were in excess of the jurisdiction of the justice,

because the offence created by the statute was the exercising of a calling on the Lord's day, and, if the plaintiff had continued baking from morning till night, it would still be but one offence; that the four convictions were for one and the same offence; and that an action would lie against the justice and the officers. On the other side it was urged, that, as the justice had general jurisdiction of the offence in question, the convictions must be quashed, or reversed on appeal, before they could be questioned. At a subsequent day, the unanimous opinion of the court was delivered by Lord Mansfield. He first considered the question whether the legality of the convictions could be objected to before they were quashed. As to this he said: "Here are three convictions of a baker, for exercising his trade on one and the same day, he having been before convicted for exercising his ordinary calling on that identical day. If the act of Parliament gives authority to levy but one penalty, there is an end of the question; for there is no penalty at common law. On the construction of the act of Parliament the offence is 'exercising his ordinary trade upon the Lord's day'; and that without any fractions of a day, hours or minutes. It is but one entire offence, whether longer or shorter in point of duration; so, whether it consists of one, or of a number of particular acts. The penalty incurred for this offence is five shillings. There is no idea conveyed by the act itself, that, if a tailor sews on the Lord's day, every stitch he takes is a separate offence; or, if a shoemaker or carpenter work for different customers at different times on the same Sunday, that those are so many separate and distinct offences. There can be but one entire offence on one and the same day. And this is a much stronger case than that which has been alluded to, of killing more hares than one on the same day. Killing a single hare is an offence; but the killing ten more on the same day will not multiply the offence, or the penalty imposed by the statute for killing one. Here, repeated offences are not the object which the legislature had in view in making the statute; but singly, to punish a man for exercising his ordinary trade and calling on a Sunday. Upon this construction, the justice had no jurisdiction whatever in respect of the

three last convictions. How, then, can there be a doubt but that the plaintiff might take this objection at the trial?" As to justifying the levy under the last three warrants, Lord Mansfield said: "But what could the justification have been in this case, if any had been attempted to be set up? It could only have been this: That because the plaintiff had been convicted of one offence on that day, therefore the justice had convicted him in three other offences for the same act. By law that is no justification. It is illegal on the face of it; and, therefore, as was very rightly admitted by the counsel for the defendant, in the argument, if put upon the record by way of plea, would have been bad, and on demurrer must have been so adjudged. Most clearly, then, it was open to the plaintiff, upon the general issue, to take advantage of it at the trial. The question does not turn upon niceties; upon a computation how many hours distant the several bakings happened; or upon the fact of which conviction was prior in point of time; or that for uncertainty in that respect they should all four be held bad. But it goes upon the ground that the offence itself can be committed only once in the same day."

In the case at bar the statute provides, that if any male person shall thereafter cohabit with more than one woman, he shall, on conviction, be punished thus and so. The judgment in the case, taken in connection with the other proceedings in the record and the statute, shows, within the principle of *Crepps* v. *Durden*, that there was but one entire offence, whether longer or shorter in point of duration, between the earliest day laid in any indictment and the latest day laid in any. There can be but one offence between such earliest day and the end of the continuous time embraced by all of the indictments. Not only had the court which tried them no jurisdiction to inflict a punishment in respect of more than one of the convictions, but, as the want of jurisdiction appears on the face of the judgment, the objection may be taken on *habeas corpus*, when the sentence on more than one of the convictions is sought to be enforced. If such an objection could be taken in *Crepps* v. *Durden*, in a collateral action for damages, it can be taken on a *habeas corpus* to release the party

from imprisonment under the illegal judgment. These considerations distinguish the case from that of *Ex parte Bigelow*, (*ubi supra*,) and bring it within the principle of such cases as *Ex parte Milligan*, 4 Wall. 2, 131; *Ex parte Lange*, 18 Wall. 163, 178; and *Ex parte Wilson*, 114 U. S. 417.

A distinction is laid down in adjudged cases and in text-writers between an offence continuous in its character, like the one at bar, and a case where the statute is aimed at an offence that can be committed *uno ictu*. The subject is discussed in 1 Wharton's Criminal Law, 9th ed., §§ 27, 931, and the cases on the subject are cited.

The principle which governs the present case has been recognized and approved in many cases in the United States : *Washburn* v. *McInroy* (1810), 7 Johns. 134; *Mayor* v. *Ordrenan* (1815), 12 Johns. 122; *Tiffany* v. *Driggs* (1816), 13 Johns. 253; *State* v. *Commissioners* (1818), 2 Murph. (N. C.), 371; *United States* v. *McCormick* (1830), 4 Cranch C. C. 104; *State* v. *Nutt* (1856), 28 Vt. 598; *State* v. *Lindley* (1860), 14 Ind. 430; *Sturgis* v. *Spofford* (1871), 45 N. Y. 446; *Fisher* v. *New York Central & Hudson River Railroad* (1871), 46 N. Y. 644; *State* v. *Egglesht* (1875), 41 Iowa, 574; *United States* v. *New York Guaranty & Indemnity Co.* (1875), 8 Ben. 269; *United States* v. *Erie Railway Co.* (1877), 9 Ben. 67, 68.,

The case of *Commonwealth* v. *Connors*, 116 Mass. 35, gives no support to the view that a grand jury may divide a single continuous offence, running through a past period of time, into such parts as it may please, and call each part a separate offence. On the contrary, in *Commonwealth* v. *Robinson*, 126 Mass. 259, it is said that the offence of keeping a tenement for the illegal sale of intoxicating liquors on a day named, and on divers other days and times between that day and a subsequent day, is but one offence, even though the tenement is kept during every hour of the time between those two days, such offence being continuous in its character.

On the whole case we are unanimously of opinion that

*The order and judgment of the District Court for the Third Judicial District of Utah Territory must be reversed and the case be remanded to that court, with a direction to grant*

*the writ of* habeas corpus *prayed for, and to take such proceedings thereon as may be in conformity with law and not inconsistent with the opinion of this court.*