107  435<br>110  48

PEOPLE *v.* COX.

1. CRIMINAL LAW—DISORDERLY HOUSE—FORMER CONVICTION.

A conviction under the disorderly act (3 How. Stat. § 1997*a*)
of keeping a house for the resort of prostitutes is a bar to a
subsequent prosecution founded upon the same transaction,
under 3 How. Stat. § 9286, for keeping a house of ill fame, re-
sorted to for the purpose of prostitution or lewdness.

2. SAME—CONTINUING OFFENSE.

The keeping of a disorderly house is a continuing offense, and
a conviction therefor bars another prosecution for such keep-
ing anterior to the date laid in the former indictment.

3. SAME—PLEA IN BAR—DISCHARGE OF RESPONDENT.

The reversal of a criminal case for error in sustaining a demurrer
to a plea of former conviction entitles the respondent to a
discharge.

Error to Houghton; Hubbell, J. Submitted November
21, 1895. Decided December 17, 1895.

Ira J. Cox was convicted of keeping a house of ill fame,
and sentenced to imprisonment in the State prison at
Marquette for three years. Judgment reversed and
respondent discharged.

*Joseph F. Hambitzer*, for appellant.

*A. T. Streeter*, Prosecuting Attorney, for the people.

HOOKER, J. Section 1997*a*, 3 How. Stat., declares that "all keepers of bawdy houses, or houses for the resort of prostitutes, * * * shall be deemed disorderly persons;" and by the succeeding section the first offense is made punishable by a fine of $50 and costs of prosecution, or by imprisonment in the county jail or Detroit house of correction not exceeding 30 days, or the person convicted may be required to give sureties for good behavior for the period of three months.

Section 9286, 3 How. Stat., provides that—

"Every person who shall keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, and every person who shall solicit, or in any manner induce, a female to enter such house for the purpose of becoming a prostitute, or shall by force, fraud, deceit, or in any like manner procure a female to enter such house for the purpose of prostitution or of becoming a prostitute, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the State prison not more than five years, or in the county jail not more than one year, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment, in the discretion of the court."

The defendant appeals from a conviction under the latter section, upon an information which charges that—

"Heretofore, to wit, on the 1st day of December, A. D. 1894, and on divers other days and times between that day and the 1st day of January, A. D. 1895, * * * he unlawfully and feloniously did keep and maintain a certain house of ill fame, resorted to for the purpose of prostitution and lewdness."

To this information a plea of former conviction was interposed, setting forth the warrant upon which said conviction was had, and stating that in that proceeding he was prosecuted for keeping the same house, and that

it was a continuation of the same offense for which he is now prosecuted. The warrant mentioned shows that he was proceeded against as a disorderly person, under the section first mentioned, the charge being—

"That heretofore, to wit, on the 23d day of March, A. D. 1895, and for ten days preceding that day, at the township of Duncan, in said county, Ira Cox, of said township of Duncan, has been and is a disorderly person, within the meaning of section 1 of Act No. 264 of the Public Acts of Michigan of 1889, being section 1997*a* of Howell's Annotated Statutes of the State of Michigan, for that the said Ira Cox, at the township of Duncan, in said county, during and at times aforesaid, was the keeper of a house for the resort of prostitutes."

It will be noticed that the present prosecution is for an alleged offense anterior to that upon which he was first convicted.

Two questions are presented for our consideration:

1. Whether a continuous keeping of a house of ill fame, resorted to for the purpose of prostitution, etc., is a continuing offense, so that a conviction bars another prosecution for such keeping previous to the time of the indictment upon which a conviction has been had.

2. If so, whether a conviction, under the disorderly act, of keeping a house for the resort of prostitutes, bars a prosecution for keeping a house of ill fame, resorted to for the purposes of prostitution, at a time previous to the first indictment.

To establish guilt under the disorderly act, it is necessary to show that the house is kept for the resort of prostitutes. Under the other act, the house must be resorted to for purposes of prostitution and lewdness by men or women, or both, and it must be a house of ill fame. The first falls short of the second, as it may or may not be a house of ill fame, and acts of prostitution may or may not be committed there. The act implies that it shall be a rendezvous for prostitutes,—a place which they visit or haunt (see Webst. Dict. "Resort"); and it may be open to question whether the disorderly act would apply to a

person who kept a house where prostitutes merely made it their permanent residence. But such a person might be punishable under the other statute, if the house was a house of ill fame, and was resorted to (*i. e.*, visited) for the purpose of prostitution and lewdness. These acts are made criminal under separate statutes, but they are of the same nature. The act of keeping a disorderly house is the gravamen of the offense in each. A given state of facts may permit an election by the prosecutor as to which of two offenses he will charge; but in this case, as keeping a disorderly house is a vital incident under both statutes, he should not be permitted to bring successive charges under both acts for one and the same transgression. The lesser offense is necessarily included in the greater, and "as the government cannot begin with the highest, and then go down step by step, bringing the man into jeopardy for every dereliction included therein, neither can it begin with the lowest and ascend to the highest, with precisely the same result." We think, therefore, that one should not be prosecuted under both statutes for one and the same unlawful act.

It remains to inquire whether this doctrine can be applied in this case, in view of the fact that the charge in this case covers time anterior to the charge in the former. Can the continuous keeping of a house under either of these statutes be treated as more than one offense? Technically speaking, when one engages in a business, he cannot be said to engage a second time in the same venture. He may engage in a similar business elsewhere, or upon another occasion, after bringing the first venture to a close. The same may be said about keeping a saloon or brothel. So long as it is uninterrupted, it is really but one act of keeping. To hold otherwise at once raises the question of duration of the offense. Shall the same be measured by years, months, weeks, days, hours, or by still shorter intervals? On the other hand, is there no difference between the offender of a day, and one

whose business has run a year? And, further, after one has incurred and suffered one conviction, may he continue the unlawful act *ad libitum*, safe from further prosecution, by reason of the former conviction?

The injustice of dividing a continuous act into as many offenses as there are days in the period of its continuation was early seen and asserted. The principle was applied in a case where four charges were made of infractions of the law upon one and the same day, in the case of *Crepps* v. *Durden*, Cowp. 640. That case arose under a statute prohibiting labor upon the Lord's day, and it was held that a conviction upon proof that a baker sold a hot loaf upon that day was a bar to prosecutions for selling other loaves upon the same day, the court saying that: "There is no idea conveyed by the act itself that, if a tailor sews on the Lord's day, every stitch he takes is a separate offense. * * * There can be but one entire offense on one and the same day." *In re Snow*, 120 U. S. 281, involved the question before us; and it was held that the offense of illegal cohabitation as husband and wife was a "continuous offense, having duration, and not an offense consisting of an isolated act." The court refused to permit more than one conviction for such act, and called attention to the great injustice of cumulative penalties, which would be possible under the practice insisted upon by the prosecutor, and said, "It is to prevent such an application of penal laws that the rule has obtained that a continuing offense of the character of the one in this case can be committed but once, for the purposes of indictment or prosecution, prior to the time the prosecution is instituted." Again it is said, alluding to such cumulative sentences, "No case is cited where what has been done in the present case has been held to be lawful, but the uniform current of authority is to the contrary, both in England and in the United States;" citing the case of *Crepps* v. *Durden, supra.* A number of the American cases are cited in the opinion, which it is

unnecessary to repeat here. See, also, *Com.* v. *Robinson*, 126 Mass. 259, which is thought to be in harmony with the rule laid down in the case of Snow. *In re Nielsen*, 131 U. S. 176, is another case in point, and is decisive of both questions in the case. The case of *People* v. *Gault*, 104 Mich. 575, is distinguishable from this case, as it arose under a statute which provided that the transactions of each day should be a separate offense. It is, in our opinion, well settled that a prosecution upon a charge laid at a date anterior to a former indictment is, in such a case as this, barred by a conviction upon such former indictment, where the offense charged is a continuing one.

The defendant, therefore, had the right to go to the jury upon the question of fact raised by the plea in bar, and the conviction must therefore be set aside, and the respondent discharged. See *People* v. *Jones*, 48 Mich. 554. Ordered accordingly.

The other Justices concurred.