**UNITED STATES of America,
Appellee,**

v.

**Irving TOLUB, Appellant.**

**No. 58, Docket 27603.**

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1962.

Decided Oct. 26, 1962.

See, also, D.C., 187 F.Supp. 705.

Joseph E. Brill, New York City (Jack Hirsch, on the brief), for appellant.

Daniel P. Hollman, Asst. U. S. Atty., Southern District of New York, New York City (Vincent L. Broderick, U. S. Atty. and Andrew T. McEvoy, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge.

Irving Tolub appeals from his conviction by a jury in the United States District Court for the Southern District of New York on a twelve count indictment charging obstruction of interstate commerce by extortion in violation of 18 U.S.C. § 1951.[1] Appellant attacks the conviction on four principal grounds: 1. that there was a failure of proof of the elements of the crime charged; 2. that the government failed to prove that each crime charged in the several counts

---

1. The pertinent portions of 18 U.S.C. § 1951 are:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—
\*      \*      \*      \*      \*

"(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

"(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

resulted from a "fresh impulse"; 3. that evidence as to prior acts was improperly admitted; and 4. that the trial judge erroneously gave the so-called "Allen Charge" to the jury. Finding no merit in any of these contentions, we affirm.

There was evidence from which the jury could conclude the following. From April 1952 to April 1956, Tolub was a business agent for Local 129, Cloak-Out-of-Town Department of the International Ladies' Garment Workers' Union. Among the shops in the jurisdiction of Tolub's local was Bass-Feit, Inc. As business agent, Tolub's duties included enforcement of the collective bargaining agreement, acting as an intermediary in employer-employee disputes, collection of dues, and investigation of workers' complaints. In addition, Tolub was a member of the committee which settled labor costs for each garment and also the wage rates.

In September 1952, Tolub demanded a one-third interest in Bass-Feit, Inc. Feit, who had just purchased a one-half interest in the company for $100,000, was in charge of the company's labor relations. Tolub pointed out to Feit that the company had a "good labor setup" which should not be disturbed. When Tolub "insisted that something should be done to take care of him," Feit offered him $75 a week. Tolub finally agreed to take $100 per week and the weekly cash payments of $100 commenced immediately thereafter, being made regularly until November 1955. In August 1954, Tolub demanded and received $500 in connection with a resettlement of the price to be paid to pressers. In January 1955 a second settlement was made, likewise for $500. Upon a third settlement, in August 1955, Feit paid Tolub $500 of which $250 was returned. All payments were suspended in November 1955 when Feit refused Tolub's threatening demand for $200 per week. Following the refusal, Bass-Feit, Inc. experienced labor difficulties.

The indictment, returned on August 18, 1960, includes twelve counts. The first relates to the special payment of $250 on August 19, 1955, and counts 2 to 11 relate to ten $100 weekly payments between August 23 and October 25, 1955 (any charge based on previous payments having been barred by the five-year statute of limitations, 18 U.S.C. § 3282). The twelfth count charges attempted extortion and is based on Tolub's alleged demand for $200 per week on November 1, 1955. Upon the defendant's conviction on all counts, the district judge sentenced him to nine months' imprisonment on Count 1 and nine months' imprisonment on each of Counts 2 through 12, the sentences on the latter eleven counts to run concurrently with each other but consecutively to the sentence imposed on Count 1, the sentences on the latter eleven counts being suspended and the defendant being placed on probation for one year.

■■ Tolub contends that the trial court erred in refusing to direct a verdict of acquittal, claiming that there was insufficient evidence to show that Feit was put in reasonable fear by the accused.[2] There was fear, as is evidenced by Feit's testimony as to his state of mind at the time he agreed to pay Tolub: "I was overwrought. I was very much concerned because I had just put up $100,000 in this company and I felt if I didn't comply or make some settlement of this thing I would have more trouble on top of the trouble I already had." That the fear must be a reasonable one is well established. Bianchi v. United States, 219 F.2d 182, 189 (8 Cir.), cert. denied, 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955); Callanan v. United States, 223 F.2d 171, 175 (8 Cir.), cert. denied, 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764 (1955); Cape v. United States, 283 F.2d 430 (9 Cir., 1960). There was ample evidence from which the jury could find that Tolub was in a position to harm Bass-Feit, Inc. and that fear of such

2. Tolub also claims that the government failed to prove venue, interstate commerce, threats, and payments. There was ample evidence to establish all these elements.

harm was reasonable. Tolub's duties as business agent enabled him to influence the employees, to cause slowdowns and stoppages, even though such slowdowns were not approved by the union. He could affect labor costs even though he was only one of several members of the committee. Feit's testimony as to work stoppages in December 1955, although contradicted by a union official, gave support to the government's case.

Appellant claims that the numerous and extensive social contacts he had with Feit during the period covered by the alleged payments negate the threats, if any, and show lack of fear. But Feit testified that Tolub "was a fundamental part of my business and I wanted to avoid any further pressing so I socialized with him." This was a question for the jury which resolved it against the appellant.

Tolub argues that there is insufficient evidence that the payments charged in the indictment were the result of threats as the only evidence of threat occurred in 1952 and as to that the statute of limitations had run. He also contends that the counts as to payments in 1955 do not charge separate and complete crimes, although he cites no authority for this proposition. As is apparent from the above statement of the evidence, there is no merit whatever to these contentions.

■ On the evidence adduced, the jury had ample basis for concluding that each of the 1955 payments charged in the indictment manifested all the elements of the crime. Admittedly the initial threat was made back in 1952, but the statute does not require a verbal threat. It requires only that defendant induce his victim to part with property through the use of fear. 18 U.S.C. § 1951(b) (2). The jury is permitted to find such inducement by use of fear from testimony as to the state of mind of the victim, Nick v. United States, 122 F.2d

660, 671, 138 A.L.R. 791 (8 Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L. Ed. 550 (1941), United States v. Stirone, 168 F.Supp. 490, 496–497 (W.D.Pa., 1957), aff'd, 262 F.2d 571, 575–576 (3d Cir. 1958), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Further, the position of the defendant as a union official, if known to the victim, is evidence from which "deliberately imposed fear" can be inferred. See United States v. Stirone, supra. In the instant case, Feit testified that he was "awed" and "upset". Tolub remained in his position as business agent with the same duties regarding the employees, the settlement of labor costs and wage rates. The payments were not installments of a lump sum. Each payment proceeded from a separate extortion. In Patton v. United States, 42 F.2d 68 (8 Cir., 1930), successive bribe payments were regarded as separate offenses. In Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916), the Supreme Court upheld a conviction for mail fraud where the separate counts covered separate mailings. Just as in those situations where each of many acts forwarding a single underlying purpose was a separate offense we think that each acceptance of payment by Tolub during the continuance of the same underlying conditions was a separate act of extortion.[3]

■ The evidence of payments made prior to the payments charged in the indictment was admissible. It was evidence which tended to show Tolub's intent and his victim's state of mind at the time of the payments charged in the indictment. United States v. Palmiotti, 254 F.2d 491, 497 (2 Cir., 1958).

■ Appellant's claim that the trial judge erred in giving the so-called "Allen Charge," Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), when the jury reported that it

3. This disposes of Tolub's "separate impulse" contention. But it should be noted that, since the sentence on counts two to twelve are concurrent, the propriety of the conviction on count twelve renders the challenge to the other counts "of no moment." United States v. Mont, 306 F.2d 412, 414 (2 Cir., 1962).

**290**

could not agree after deliberating for more than ten hours is without merit. See United States v. Thomas, 282 F.2d 191, 195 (2 Cir., 1960) and cases cited therein. All other claims of error are too insubstantial to warrant discussion.

Affirmed.

FRIENDLY, Circuit Judge (concurring).

There being no evidence of any repetition of threats by Tolub between August 23 and October 25, 1955, and only the vaguest evidence as to how the ten $100 weekly payments during that period were made, I do not wish to be committed to the view that his receipt of each $100 constituted a separate violation of 18 U.S.C. § 1951. The multiplication of counts in indictments has become a matter of serious concern, because of the threat thereby posed to the effective working of the jury system and the possibility of sentences out of proportion to the true gravity of the offense. The mail fraud case cited by the majority, Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916), is rather plainly distinguishable, as is United States v. Guterma, 281 F.2d 742, 752–753 (2 Cir.), cert. denied, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960). The bribery case, Patton v. United States, 42 F.2d 68 (8 Cir., 1930), comes closer, but there the defendant was the payer, not the receiver; quite clearly a "fresh impulse" was needed for each payment. In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887), and United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), are on the other side of the line, but I freely concede that, in Mr. Justice Frankfurter's elegant phrase, 344 U.S. at 224, 73 S.Ct. 227, this case "is not attracted" by them either. Since Judge Metzner wisely made the sentences on counts 2 through 12 concurrent, we are not obliged to decide the issue here; I would dispose of it on the basis indicated in footnote 3 of my brother Lumbard's opinion.