Kaye, J.
(dissenting). "Thé Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units” (Brown v Ohio, 432 US 161, 169). Recognizing this, we recently concluded in Matter of Johnson v Morgenthau (69 NY2d 148, 152) that the uninterrupted possession of a weapon, over a six-day period, constituted a continuous offense which could support only one prosecution for criminal possession of a weapon in the third degree. While the Legislature might have defined criminal conduct in terms of temporal units (see, e.g., ECL 71-4001), we found that it had not done so with respect to possessory crimes, defining them instead in terms of dominion and control (id.).
The majority now ignores the words of Brown and the premise of Johnson, and holds that criminal possession of a weapon in the second degree — unlike the other possessory crimes defined in Penal Law §§ 265.01-265.05 — may be divided into temporal units. Based on a strained construction of the statutory definitions of the various possessory crimes and a misapplication of Blockburger v United States (284 US 299), the court holds that a possession which can support only one count of weapon possession in the third or fourth degree can support multiple counts in the second degree. We accept neither that logic nor that result, and therefore respectfully dissent.
Like third and fourth degree weapon possession, second *91 degree possession is part of the comprehensive statutory scheme focused on the possession itself. As we made clear in People v Almodovar (62 NY2d 126, 130): "[t]he essence of the illegal conduct defined in sections 265.01-265.05 of the Penal Law [criminal possession of a weapon in the first through fourth degree] is the act of possessing a weapon unlawfully.” (See also, People v Pons, 68 NY2d 264, 266.) The crime may become more serious — and punished accordingly — because of the intent with which the defendant acts, or the place where the possession occurs. But the essence of the crime — unlawful dominion and control of a weapon — continues unabated whether or not the aggravating or mitigating factors are present (see, People v Almodovar, 62 NY2d 126, 130, supra).
Recognizing the common essence of the various possessory crimes, we held in Matter of Johnson v Morgenthau (69 NY2d 148, 152, supra) that for double jeopardy purposes possession in the third degree and possession in the fourth degree were the same crime, although fourth degree possession entailed possession inside a defendant’s home or business and third degree possession encompassed possession elsewhere. We of course could have found that the physical limitations made the crimes discrete — that a separate crime of third degree possession occurs when a defendant leaves the home or place of business with a weapon, and a separate crime of fourth degree possession occurs when defendant returns with it. But we declined to do so because the unlawful dominion and control of the weapon — the crux of both crimes — was continuous, notwithstanding the aggravating element of location. Thus we held that so long as possession of a weapon continues uninterrupted, it constitutes but a single possessory offense and cannot be the subject of multiple prosecutions.
Despite the absence of any statutory language or legislative history supporting its construction, the court holds that the aggravating factor of intent, unlike the aggravating factor of location, transforms the essential nature of the crime of possession. The majority now finds that second and third degree possession are "fundamentally different” crimes and that the "essence” of second degree possession "is not possession but the intent to use the weapon against another and the offense should not be equated to simple possessory offenses for double jeopardy purposes to 'bridge’ episodes of second degree possession into a single offense.” (Majority opn, at 89.) Such an analysis, however, was specifically rejected in Johnson (supra) because, as we explained in Almodovar (supra) and Pons *92 (supra), the gist of both crimes is the same — the unlawful dominion and control of a weapon. That possession continues unabated no matter what defendant’s intent may be. If a defendant cannot be subject to multiple prosecutions for third degree possession where the weapon is taken in and out of a home or place of business because the possession continues unabated, then for the same reason defendant should not be subject to multiple prosecutions for uninterrupted possession accompanied by a changed mental state.
To explain the departure from, and inconsistency with, our own recent precedents, the court relies on the "separate impulse” test of Blockburger v United States (284 US 299, supra), claiming that after defendant had killed his wife his initial "impulse” abated and a separate "impulse” was formed when he was confronted by the police outside his apartment. The analogy to Blockburger is inapt.
Blockburger addressed the question whether two discrete sales of narcotics, a day apart, were one crime or two. The Supreme Court concluded that the two separate acts of sale constituted two separately prosecutable crimes. In reaching that conclusion, the court distinguished In re Snow (120 US 274), where it had earlier held that a defendant’s bigamous relationship with several wives, extending over three years, was but a single continuing crime. The court in Blockburger relied upon the Snow rationale to explain the difference between "an offense continuous in its character” and an " ’offense consisting of an isolated act’ ” (Blockburger v United States, 284 US 299, 302, supra), and in so doing enunciated the "separate impulse” test: "Each of several successive sales constitutes a distinct offense, however closely they may follow each other. The distinction stated by Mr. Wharton is that 'when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie’ * * * 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately * * * if the latter, there can be but one penalty.’ ”
Clearly, the Blockburger "separate impulse” test focuses on whether there have been discrete "acts” rather than a continuous course of conduct. Bigamy is a continuous course of conduct and unless interrupted is subject to a single prosecu *93 tion; discrete drug sales are separate acts or "impulses,” each of which may be separately prosecuted (see also, Ebeling v Morgan, 237 US 625 [a defendant was properly convicted of separate counts pursuant to a Federal statute proscribing the tearing of mail bags, because he engaged in discrete acts, as opposed to a continuous course of conduct]). But the majority misapplies Blockburger to this case, because the focus here is not on discrete acts but on a continuous course of conduct accompanied by arguably discrete intents. The majority, in effect, now holds that a continuous course of conduct may be subject to multiple prosecutions based upon the existence of separate intents. Blockburger did not so hold.
Such a focus on the "intent” or object of the act rather than each act itself was implicitly rejected by the Supreme Court in Braverman v United States (317 US 49). The question in Braverman was whether a single agreement to commit acts in violation of several penal statutes was to be punished as one or several conspiracies (id., at 52). The court answered by looking to the essence or gist of the crime of conspiracy — the agreement to commit one or more unlawful acts:
"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. * * *
"A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under’ the statute whose violation is its object [citations omitted]. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. See Blockburger v. United States, 284 U.S. 299, 301-4; Albrecht v. United States, 273 U.S. 1, 11-12. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute * * * For such a violation, only the single penalty prescribed by the statute can be imposed.” (Braverman v United States, 317 US 49, 53-54, supra.)
Applied to this case, both Braverman (supra) and Blockburger (supra) support only a single prosecution for the continuous possession of a weapon: defendant’s unlawful possession of a weapon with the intent to use it unlawfully against a *94 number of people was but a single, continuous course of conduct. -
This conclusion is, moreover, consistent with a basic premise of Anglo-American criminal law that no crime can be committed by bad thoughts alone. Something in the way of an act or omission is required before criminal liability may attach (1 LaFave & Scott, Substantive Criminal Law § 3.2 [b], at 273 [2d ed]). Evil intent — while possibly an aggravating factor or even a prerequisite to criminal liability — cannot, standing alone, support a criminal conviction, and it cannot transform what would otherwise constitute a single crime into multiple criminal offenses. Indeed, a cursory glance at our own penal code reveals the essential role of the "act” in the articulation of criminal offenses, with the element of intent effecting the gravity of punishment. For example, the Penal Law proscribes the act of homicide, grading the severity of the offense with the nature of the actor’s intent (see, People v Stanfield, 36 NY2d 467, 470). Article 265 of the Penal Law, similarly, proscribes the act of possessing a weapon unlawfully. "The crime may be more serious because of the intent with which the defendant acts”, but without the proscribed act or course of conduct — the unlawful possession — there is no crime (People v Almodovar, supra, at 130; see, People v Pons, supra).
Thus, based on the statute, our own recent precedents and fundamental precepts of the criminal law, we would reverse defendant’s conviction on grounds of double jeopardy.
Two concerns remain. First, while we believe that the court’s new rule is incorrect, we fear that it is also unworkable. As the statute reads, possession of a weapon "is presumptive evidence of intent to use the same unlawfully against another.” (Penal Law § 265.15 [4].) Now a new element is introduced to a weapons possession prosecution: defendant’s mind must be probed to determine exactly what intent defendant actually had, and against whom, at various points in time. Theoretically, continued possession in a crowd now can support dozens of separate prosecutions; a defendant apprehended with a weapon after verbally expressing an intent to use it against a series of persons, without ever using it all, could be subject to multiple prosecutions for second degree possession. It surely could not have been the intention of the Legislature to allow one continuous possession of a weapon to be punished even more seriously than, for example, homicide. *95 Second, we share the concern expressed by the People that a defendant who has possessed a weapon with a certain unlawful intent not be given in effect a "free ride” to threaten others. The answer, however, is that the acts of such a defendant in using, attempting to use or threatening to use that weapon against others will support multiple prosecutions and cumulative punishments — as, for example, for manslaughter, attempted murder, assault, criminal use of a weapon, and menacing.
What our law does not support, however, is multiple prosecution of a defendant for the single, continuous possession of a weapon.
Chief Judge Wachtler and Judges Hancock, Jr., and Bellacosa concur with Judge Simons; Judge Kaye dissents and votes to reverse in a separate opinion in which Judges Titone and Alexander concur.
Order affirmed.