Argued and submitted January 7; decision of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings June 10, 2021

STATE OF OREGON,
*Petitioner on Review,*

*v.*

CLIFFORD DARRELL KEYS,
*Respondent on Review.*

(CC 16CR24492) (CA A163519) (SC S067691)

489 P3d 83

Defendant was charged by information with possessing methamphetamine. At his preliminary hearing, defendant's appointed counsel waived defendant's right to a preliminary hearing. Defendant appealed, arguing that he did not knowingly waive his right to a preliminary hearing as required by Article VII (Amended), section 5, and that the lack of a valid waiver deprived the circuit court of subject matter jurisdiction. *Held*: An invalid waiver of a preliminary hearing does not deprive a circuit court of subject matter jurisdiction, so a challenge to the validity of such a waiver is subject to ordinary rules of preservation.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

On review from the Court of Appeals.\*

Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender.

Jordan R. Silk, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Kistler, Senior Judge, Justice pro tempore.\*\*

_____

\*  On appeal from Marion County Circuit Court, Sean E. Armstrong, Judge. 302 Or App 514, 460 P3d 1020 (2020).

\*\*  Balmer, J., did not participate in the consideration or decision of this case.

KISTLER, S. J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

**KISTLER, S.J.**

The primary question that this case presents is whether a defective waiver of a preliminary hearing deprives a circuit court of jurisdiction. Following *Huffman v. Alexander*, 197 Or 283, 251 P2d 87 (1952), *reh'g den*, 197 Or 283, 253 P2d 289 (1953), the Court of Appeals held that it does. *State v. Keys*, 302 Or App 514, 526, 460 P3d 1020 (2020). The Court of Appeals accordingly considered defendant's unpreserved challenge to his waiver, found the waiver defective, and reversed his conviction. We allowed the state's petition for review to consider whether a defective waiver of a preliminary hearing is a jurisdictional defect. We hold that *Huffman* stands for a more limited proposition than defendant perceives and that the state constitutional provision on which he relies does not establish that a defective waiver of a preliminary hearing deprives a circuit court of subject matter jurisdiction. We accordingly reverse the Court of Appeals decision and remand this case to the Court of Appeals for further proceedings.

The relevant facts are procedural. A deputy district attorney filed an information charging defendant with possessing methamphetamine. At arraignment, the circuit court appointed an attorney to represent defendant. After confirming defendant's identity and date of birth, defendant's attorney told the court:

> "We will acknowledge receipt of the Information, waive any further reading or advice of rights. His name and date of birth are correctly set out on that document. We are prepared to waive preliminary hearing at this time, reserving the right to assert that in the future should it become necessary."

Several days later, defendant filed a motion to suppress evidence that he had possessed methamphetamine. The trial court denied the motion, and defendant agreed to a stipulated facts trial. Among other things, defendant stipulated that, during a traffic stop, an officer "observed what he believed was a small bindle of controlled substance in defendant's wallet" and that the substance tested positive for methamphetamine. Based on those and other

stipulations, the circuit court found defendant guilty of possessing methamphetamine.

On appeal, defendant did not challenge the circuit court's ruling on his suppression motion. Rather, he argued that he had not knowingly waived his right to a preliminary hearing, as the Oregon Constitution requires. *See* Or Const, Art VII (Amended), § 5(5) (providing that a person may be charged by information with a felony if a magistrate finds probable cause after a preliminary hearing or "if the person knowingly waives preliminary hearing"). Defendant noted that his attorney waived his right to a preliminary hearing only moments after she met him and before she had had a chance to speak with him about his rights. It necessarily followed, he contended, that he had not been informed of his right to a preliminary hearing and, as a result, his waiver had not been knowing.

Defendant acknowledged he had not raised that issue in the trial court. He relied, however, on this court's decision in *Huffman* for the proposition that an invalid waiver of a preliminary hearing is a jurisdictional issue that can be raised for the first time on appeal. Alternatively, he argued that, even if an invalid waiver is not a jurisdictional issue, it is a plain error that the Court of Appeals not only can but must correct. The state responded that, under the Court of Appeals decision in *State v. Sheppard*, 35 Or App 69, 581 P2d 549 (1978), *rev den*, 285 Or 1 (1979), defendant had waived his right to a preliminary hearing by proceeding to trial while being represented by counsel and without objecting to the absence of a preliminary hearing.

In analyzing the parties' arguments, the Court of Appeals limited its decision in *Sheppard* to its unique procedural facts and sought to follow this court's decision in *Huffman*. *Keys*, 302 Or App at 523-26. The court began by noting that it was undisputed that defendant's waiver had failed to comply with Article VII (Amended), section 5(5), of the Oregon Constitution. *Id.* at 517.[1] In considering whether that failure was a jurisdictional problem under *Huffman*, the Court of Appeals acknowledged that *Huffman*'s use of

_____

[1] Consistently, the state does not dispute on review that defendant's waiver failed to comply with Article VII (Amended), section 5(5).

the term "jurisdiction" was atypical. The court determined, however, that *Huffman* established that a defective waiver of a preliminary hearing deprives a circuit court of "jurisdiction to *try* or *convict*" a defendant. *Id.* at 523 (emphasis in original). The court did not decide whether "jurisdiction to try or convict a defendant" differs from subject matter jurisdiction. Rather, the court concluded that, without a preliminary hearing or a valid waiver of a preliminary hearing, a circuit court lacks "the kind of jurisdiction that *must* exist for a court to try or convict a defendant and, like the absence of subject matter jurisdiction, its absence may be raised for the first time on appeal." *Id.* at 524 (emphasis in original). The Court of Appeals accordingly reversed the trial court's judgment.

We allowed the state's petition for review to consider that issue. We discuss the text of Article VII (Amended), section 5(3)-(5) in greater detail below. However, to put the issue in context, we first describe those subsections briefly.[2] Article VII (Amended), section 5(3)-(5), defines how a person may be charged with a crime punishable as a felony. The charge may be initiated by a grand jury indictment. Or Const, Art VII (Amended), § 5(3). Alternatively, a felony charge may be initiated by a district attorney's information if the person charged appears before a circuit court judge and knowingly waives indictment. *Id.* § 5(4). Finally, a felony charge may be initiated by a district attorney's information if the information is accompanied either by a preliminary hearing before a magistrate to establish probable cause or by the person's knowing waiver of a preliminary hearing. *Id.* § 5(5).

---

[2] Article VII (Amended), section 5, provides, in part:

"(3) Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4) The district attorney may charge a person on an information filed in circuit court of [*sic*] a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5) The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing."

Article VII (Amended), section 5(3)-(5), requires two components to initiate a felony prosecution. First, it requires an accusatory instrument, either an indictment or an information. Second, it requires a check on the district attorney's charging authority. That check can be in the form of the grand jury's determination of probable cause, a magistrate's determination of probable cause, or the determination by the person charged, reflected in the person's waiver, that a grand jury or a magistrate's determination of probable cause is an unnecessary procedural step. *See* Official Voters' Pamphlet, General Election, Nov 5, 1974, 13 (describing a magistrate's determination of probable cause and a person's waiver of that right as coequal checks on the district attorney's charging authority).

With that background in mind, we note that this is not a case in which there was no accusatory instrument. No one disputes that the district attorney properly initiated this case by filing an information charging defendant with possessing methamphetamine. Nor does this case require us to reconsider our decision in *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001), in which we held that a defective accusatory instrument does not deprive a circuit court of subject matter jurisdiction. Defendant does not contend that the accusatory instrument in this case was defective in any respect. Finally, we note that this is not a case in which there was no apparent waiver of a preliminary hearing. Rather, the issue in this case reduces to the question whether an invalid waiver of a preliminary hearing will deprive a circuit court of subject matter jurisdiction.[3] Put differently, the question is whether a defect in the constitutional check on a district attorney's charging authority—*i.e.*, a defect in the defendant's waiver, a defect in the magistrate's probable cause determination, or a defect in the grand jury's probable cause determination—deprives a court of subject matter jurisdiction.

On that issue, this court has long recognized that a constitutional defect in the manner in which a grand jury is composed is not a jurisdictional problem that may be raised

---

[3] Defendant frames the issue in this case as an absence of subject matter jurisdiction, and we accept his formulation.

at any time. *Compare State v. Witt*, 33 Or 594, 596-97, 55 P 1053 (1899) (holding that a failure to comply with the constitutionally mandated method of selecting grand jurors could not be raised after the defendant's plea), *with State v. Lawrence*, 12 Or 297, 298, 7 P 116 (1885) (setting aside the grand jury's indictment based on a timely objection to the manner in which the grand jurors were selected). More recently, we recognized that a defect in the indictment does not deprive a court of subject matter jurisdiction. *Terry*, 333 Or at 186. Defendant argues, however, that a defect in waiving a preliminary hearing will deprive a circuit court of subject matter jurisdiction.

If a defect in the indictment or a defect in the manner in which the grand jury is selected does not deprive a court of subject matter jurisdiction, as this court held in *Terry* and *Witt*, it is difficult to see why a defect in waiving a preliminary hearing should lead to a different result. Defendant, however, argues that this court's decision in *Huffman* establishes that a defective waiver of a preliminary hearing will deprive a court of subject matter jurisdiction. He argues that *Huffman* is a well-reasoned decision, which we should follow. Moreover, he argues that *Huffman*'s holding follows naturally from the text and history of Article VII (Amended), section 5(3)-(5), and that, even if *Huffman* were wrongly decided, the voters approved *Huffman*'s holding when they amended Article VII (Amended) in 1958 and again in 1974, or that they approved a comparable 1887 federal decision when they amended Article VII (Original) in 1908.

The state, for its part, does not question whether the complete absence of an accusatory instrument would present a jurisdictional problem. Rather, it views a defendant's ability to waive a preliminary hearing as a personal constitutional right that, like other personal constitutional rights, must be raised below or come within an exception to the preservation rule to be considered on appeal. In its view, the text and history of Article VII demonstrate that, to the extent *Huffman* held that an invalid waiver of an indictment deprives a court of subject matter jurisdiction, *Huffman* was wrongly decided and should be overruled.

In considering the parties' arguments, we begin by describing our decision in *Huffman*. We then explain why *Huffman* is best understood as resolving only the issue that it stated it was deciding—whether an alleged error in waiving an indictment was a cognizable ground for relief in a state habeas corpus proceeding. More specifically, we explain that the ambiguity that the Court of Appeals perceived in *Huffman*'s use of the term "jurisdiction" stems from an issue that was unique to the federal habeas corpus cases on which *Huffman*'s analysis relied and does not reflect a determination regarding subject matter jurisdiction. We then turn to the text and history of Article VII (Amended), section 5, to consider whether, as defendant argues alternatively, those sources either lead independently to the conclusion that *Huffman* reached or demonstrate that, in amending Article VII, the voters approved either the holding in *Huffman* or the federal decision on which *Huffman* relied.

## I.  *HUFFMAN v. ALEXANDER*

The petitioner in *Huffman* filed a petition for a state writ of habeas corpus. He alleged, among other things, that his criminal conviction should be set aside because he had limited education and had been fraudulently induced to waive his right to a grand jury indictment in violation of Article VII (Original), section 18 (1927), of the Oregon Constitution.[4] *Huffman*, 197 Or at 291-92. The trial court dismissed the petitioner's state habeas claim without holding an evidentiary hearing on that issue, apparently because he sought to impeach on habeas what appeared from the face of the criminal trial record to be an informed, valid waiver. *See id.* at 301-02.

---

[4] Until 1927, Article VII (Original), section 18 (1908), and Article VII (Amended), section 5 (1910), were parallel constitutional provisions. Both provided that "any crime or misdemeanor" could be charged only by indictment. In 1927, the voters amended Article VII (Original), section 18 (1908), to permit a person to waive indictment, but the voters did not amend the parallel text in Article VII (Amended), section 5 (1910). *See* Or Laws 1929 p 5. In 1932, this court held that the 1910 amendment to Article VII had not repealed Article VII (Original), section 18, and that the 1927 amendment to Article VII (Original), section 18, permitted a person to waive indictment. *State v. Tollefson*, 142 Or 192, 196-97, 16 P2d 625 (1932). For that reason, in 1952, *Huffman* addressed whether the petitioner's waiver violated Article VII (Original), section 18 (1927).

As this court analyzed the petitioner's habeas claim in *Huffman*, it presented two questions. The first was whether the claim was cognizable in state habeas. *See id.* at 296-97. If it was, the second question was whether the petitioner could go behind the criminal trial record and impeach on collateral review what appeared from the face of the trial record to be an informed, valid waiver. *See id.* at 301.

In resolving the first question, *Huffman* began by discussing the categories of issues that were cognizable, as a matter of state common law, on a writ of habeas corpus. *Id.* at 297-99. *Huffman* explained that state habeas corpus could not "'be resorted to for the purpose of reviewing judgments or decrees of a court of competent jurisdiction for either errors of fact or law.'" *Id.* at 297 (quoting *Harrington v. Jones*, 53 Or 237, 239, 99 P 935 (1909)). Rather, the writ was available, at least initially, only if the court that issued the judgment or decree lacked "'jurisdiction of the person and the subject-matter.'" *Id.* (quoting *Harrington*, 53 Or at 239); *see Chavez v. State of Oregon*, 364 Or 654, 668-69, 438 P3d 381 (2019) (describing state habeas practice).

*Huffman* recognized, however, that this court had recently described the issues cognizable in state habeas "somewhat more broadly." 197 Or at 297-98 (citing *Garner v. Alexander*, 167 Or 670, 120 P2d 238 (1941)). It explained that *Garner* had "no doubt [been] influenced" by federal cases recognizing that habeas was available not only "where there [was a] want of jurisdiction over the person or the case," but also where there was "*some other matter rendering the judgment void.*" *Id.* at 298 (internal quotation marks omitted; emphasis added by *Huffman*).

*Huffman* noted that a judgment will be "void or subject to attack in habeas corpus" when there is a "[l]ack of jurisdiction of the subject-matter, jurisdiction of the person, *or jurisdiction to render the particular judgment assailed.*" *Id.* (internal quotation marks omitted; emphasis added by *Huffman*). The court did not explain what the phrase that it emphasized—"jurisdiction to render the particular judgment assailed"—meant. However, it provided one clue when it quoted with approval an earlier decision recognizing that a judgment will be void for the purposes of state habeas

when it "'is not authorized \*\*\* by the pleadings.'" *Id.* at 298-99 (quoting *Rust v. Pratt*, 157 Or 505, 511, 72 P2d 533 (1937)).

Having canvassed the cases addressing when an issue will be cognizable in state habeas, *Huffman* explained that the "first question [to be decided] is whether an Oregon court has jurisdiction to try a defendant on an information in the absence of a waiver of indictment." *Id.* at 299. *Huffman*'s use of the phrase "jurisdiction to try a defendant" is ambiguous. The phrase could refer to the absence of subject matter jurisdiction, or it could refer to the absence of "jurisdiction to render the particular judgment assailed," which *Huffman* had noted differed from subject matter jurisdiction. *Id.* at 298. That is, in framing the first question to be decided, *Huffman* could have been using the term "jurisdiction to try a defendant" to refer to a "court's [lack of] authority to grant the relief requested in a particular case" rather than its lack of subject matter jurisdiction. *See Dept. of Human Services v. C. M. H.*, 368 Or 96, 108-09, 486 P3d 772 (2021) (discussing various ways in which courts historically used the term jurisdiction).

As we explained in *C. M. H.*, courts have not always been precise in their use of the term "jurisdiction." Sometimes, their lack of precision has not had a practical consequence. *Id.* at 110. *Huffman* illustrates that category of cases. In *Huffman*, there was no need to be precise about the court's use of the term "jurisdiction," since a lack of subject matter jurisdiction or a lack of authority to take a particular action would both give rise to a cognizable state habeas claim. *See* 197 Or at 298-99. In other cases, the sense in which the term "jurisdiction" is used can matter greatly. This case illustrates the latter category of cases. In this case, if a defective waiver of a preliminary hearing deprives a court of subject matter jurisdiction, then that defect can be raised for the first time on appeal. *See C. M. H.*, 368 Or at 109. However, if a defective waiver instead deprives a court of the authority to render a conviction, then the defect cannot be raised for the first time on appeal unless the defect comes within an exception to the preservation rule. *See id.*; *cf. Peeples v. Lampert*, 345 Or 209, 219-21, 191 P3d 637 (2008) (discussing exceptions to the preservation rule).

In answering the first question it posed, *Huffman* did not explicitly identify the sense in which it was using the term "jurisdiction." Specifically, in deciding whether the underlying criminal conviction was "subject to attack in [state] habeas corpus," *Huffman* quoted the text of Article VII (Original), section 18 (1927), which provided that a person could be charged in circuit court with a "crime or misdemeanor" by indictment but also provided that a person could be charged by a district attorney's information if the person appeared before a judge of the circuit court and knowingly waived indictment. *Huffman*, 197 Or at 298-99.

The court then quoted two authorities that addressed whether the absence of an indictment will give rise to a cognizable habeas claim. The court initially quoted a legal encyclopedia for what it described as the "general rule" on that issue. *Id.* at 299-300 (quoting *Habeas Corpus*, 25 Am Jur § 38 (1940)). The court noted that "'[i]t is essential to the validity of a conviction not only that the court have jurisdiction of the crime, but that its jurisdiction be invoked in the manner sanctioned by law.'" *Id.* (quoting *Habeas Corpus*, 25 Am Jur § 38 (1940)). It then quoted the encyclopedia for the proposition that, if a crime can be charged only by indictment and if a habeas petitioner "'has not been indicted ∗ ∗ ∗, his conviction is void, and he may be released on habeas corpus.'" *Id.*

The court also discussed a second authority, the United States Supreme Court's 1887 decision in *Ex parte Bain*, 121 US 1, 7 S Ct 781, 30 L Ed 849 (1887). This court explained that the district court in *Bain* had erroneously deleted a phrase in the indictment, which it had viewed as surplusage. *Huffman*, 197 Or at 300 (describing *Bain*). The United States Supreme Court concluded that the erroneously amended indictment was "'no indictment'" at all. *See id.* (quoting *Bain*, 121 US at 13). And even though the district court otherwise would have had jurisdiction over the person and the crime, *Bain* reasoned that, as a result of the erroneous amendment, "'the jurisdiction of the offense is gone, and the [federal district] court ha[d] no right to proceed any further in the process of the case for want of an indictment.'" *Id.* (quoting *Bain*, 121 US at 13). It followed that the claimed error in *Bain* was cognizable on federal habeas.

Having described the general rule from the legal encyclopedia and the holding in *Bain*, *Huffman* concluded:

> "While the provision concerning indictment in the Fifth Amendment [which had been at issue in *Bain*] is inapplicable to state prosecutions, the same rule must be applied under Article VII, section 18 of the Oregon Constitution."

*Id*. at 301. The court added: "It follows from the express language of the [Oregon] constitutional provision and from the authorities cited that unless a defendant validly waives indictment he cannot be tried upon information filed by the district attorney. A judgment rendered upon an information without waiver of indictment would be void" and subject to collateral attack on state habeas. *Id.*

Although *Huffman* did not expressly identify the sense in which it was using the term "jurisdiction," its reasoning provides some clues as to its use of the term. *Huffman*'s conclusion that a judgment based on an invalid waiver of indictment will be "void" implies that the court was relying on "*some other matter rendering the judgment void*" rather than the absence of subject matter jurisdiction. *See* 197 Or at 298 (internal quotation marks omitted; emphasis added by *Huffman*). The same implication follows from the fact that *Huffman* emphasized that phrase and later emphasized the phrase "jurisdiction to render the judgment assailed," which *Huffman* noted differed from subject matter jurisdiction. *Id.* In short, if we had to determine the sense in which *Huffman* used the term "jurisdiction" solely from the court's decision, we would conclude, tentatively, that *Huffman* was not using the term to refer to an absence of subject matter jurisdiction or something akin to subject matter jurisdiction, as the Court of Appeals determined. Rather, *Huffman* was using the term to refer to a lack of authority to take an action, which meant only that the issue was cognizable on state habeas.

*Huffman*, however, does not stand alone. Rather, it drew from a long line of federal habeas corpus cases, which provide greater insight into how *Huffman* used the term "jurisdiction." We accordingly look to those decisions to better understand this court's decision in *Huffman*.

## II.   FEDERAL HABEAS CORPUS

When Congress passed the Judiciary Act of 1789, it authorized persons held in federal custody to petition for a federal writ of habeas corpus. The Judiciary Act of 1789, ch 20, § 14, 1 Stat 81-82. The Judiciary Act, however, did not specify which issues were cognizable in federal habeas, and the Court looked initially to the common law to make that determination. *Ex parte Watkins*, 28 US (3 Pet) 193, 201-02, 7 L Ed 650 (1830). In applying the common law in *Watkins*, the Court held that the only issue cognizable in federal habeas was whether the court that issued the judgment had "general jurisdiction over criminal cases." 28 US at 203. It reasoned: "An imprisonment under a judgment cannot be unlawful, unless the judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although [the judgment] should be erroneous." *Id.* That was true even if, as the petitioner in *Watkins* alleged, he had been indicted for a nonexistent crime. *Id.* at 201, 209. As long as the court that issued the judgment had jurisdiction over the subject, its judgment was conclusive on federal habeas.[5]

In applying that common-law limitation, the Court had to accept one fact: Until 1891, a person convicted of a crime in federal court could not, as a general matter, appeal his or her conviction. Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv L Rev 441, 473 (1963).[6] That is, as a general rule, a person convicted in federal court could not challenge either on direct appeal or by a petition for a writ of *certiorari* whether the conviction was erroneous. *Id.* The only recourse for a person convicted of a crime in federal court was to petition for a federal writ of habeas corpus. However, as *Watkins* explained, habeas was available only if the court that issued

---

[5] In reaching that conclusion, the Court contrasted judgments from courts of general jurisdiction with judgments from "inferior courts of limited jurisdiction," such as courts martial. *Watkins*, 28 US at 208-09 (distinguishing *Wise v. Withers*, 7 US (3 Cranch) 331, 2 L Ed 457 (1806)).

[6] In 1891, Congress provided for a direct appeal in federal criminal cases to the newly created federal courts of appeal. Bator, 76 Harv L Rev at 473 n 75. For a two-year period between 1889 and 1891, an appeal was available to the United States Supreme Court in capital cases. *Id.* Before then, appeals in federal criminal cases were available in the United States Supreme Court but only if there was a division of opinion among the district courts on a question of law. *Id.*

the conviction lacked jurisdiction over the crime or the person. *See Watkins*, 28 US at 203.

One commentator has explained that the absence of a direct appeal in federal criminal cases "placed tremendous expansive pressure on [federal] habeas corpus jurisdiction." Bator, 76 Harv at 473. Perhaps for that reason, in the second half of the nineteenth century, the Court began expanding the categories of issues that were cognizable in federal habeas. *See United States v. Cotton*, 535 US 625, 629-30, 122 S Ct 1781, 152 L Ed 2d 860 (2002) (noting that connection). For example, the Court issued a writ of habeas corpus in *Ex parte Siebold*, 100 US (10 Otto) 371, 25 L Ed 717 (1879), to decide whether a federal criminal statute that resulted in the petitioners' convictions was unconstitutional. The Court acknowledged, as *Watkins* had recognized, that the writ of habeas corpus cannot be used to correct an erroneous judgment. *Id.* at 375. It explained, however, that the writ could be issued for "want of jurisdiction in [a district] court over the person or the cause, or *some other matter rendering its proceedings void.*" *Id.* (emphasis added).

In explaining why a judgment based on an unconstitutional statute was "void" rather than erroneous, the Court reasoned:

> "An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause for imprisonment. It is true, if no writ of error lies, the judgment may be final in the sense that there is no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the [district] court's authority to try and imprison the party may be reviewed on *habeas corpus.*"

*Id.* at 376-77.

We do not question the interest that the Court recognized in *Siebold* in protecting persons from being imprisoned based on unconstitutional laws. However, the line between being convicted of a nonexistent crime and an unconstitutional crime seems a fine one. If, as the Court held in *Watkins*, a judgment based on a nonexistent crime

may not be reexamined on federal habeas because the district court had general jurisdiction over the subject, it is difficult to see why a judgment based on an unconstitutional statute should lead to a different result.

   The Court followed a similar pattern in other habeas cases arising from federal convictions in the late nineteenth century; that is, it issued a federal writ of habeas to determine if a federal criminal judgment was "void" in whole or in part for lack of jurisdiction or authority. For example, the Court issued a writ of habeas in *Ex parte Snow*, 120 US 274, 7 S Ct 556, 30 L Ed 658 (1887), because the district court lacked "jurisdiction" to impose consecutive sentences for three separately charged crimes that, the Court concluded, constituted only a single continuing offense.[7] 120 US at 285-86. As the Court explained, the district court had jurisdiction to enter a sentence for only one offense. *Id.* Similarly, in *Ex parte Lange*, 85 US (18 Wall) 163, 164, 21 L Ed 872 (1873), the district court had vacated an erroneous sentence shortly after entering it and imposed an amended sentence. The Court held that double jeopardy divested the district court of authority to resentence the petitioner, that the new sentence was not merely erroneous but void because "the power of the court to punish further was gone," and that habeas would lie to correct that lack of authority.[8] *Id.* at 175-78.

   In *Siebold*, *Snow*, and *Lange*, the Court did not hold that the district court lacked subject matter jurisdiction.

---

[7] In *Snow*, the grand jury issued three indictments, each of which charged the petitioner with continuously cohabiting with the same seven women for one of three successive years, and the trial court imposed three consecutive sentences on the resulting three convictions. 120 US at 276-77. The Court reasoned that, because cohabitating with the same persons is a continuing crime, the three indictments charged only a single offense, the trial court had no "jurisdiction" to impose consecutive sentences, and habeas would lie to release the petitioner from serving the second and third consecutive sentences. *Id.* at 285-86.

[8] The district court initially sentenced the petitioner in *Lange* to serve a prison sentence *and* pay a fine. Shortly afterwards, it vacated the sentence because the underlying statute authorized a prison sentence *or* a fine, and the court resentenced the petitioner solely to a term of imprisonment. In holding that habeas would lie to consider the amended sentence, the Court recognized that district courts have the authority to vacate a defendant's sentence during the same term of court, as the district court had done in *Lange*. 85 US (18 Wall) at 167. However, because the petitioner had already paid the fine and thus satisfied a separate part of his sentence, the Court held that double jeopardy divested the district court of the authority to resentence him, the new sentence was "void," and habeas would lie to correct a void sentence. *Id.* at 176-78.

Rather, it identified constitutional or other errors that resulted in what the Court characterized as a lack of authority or "jurisdiction" to take further action. It followed, the Court reasoned, that the resulting lack of authority rendered the petitioners' convictions "void" rather than erroneous and that habeas would lie to correct those errors. Although the Court posited in *Siebold* that the difference between an erroneous sentence and a void one was self-evident, *see* 100 US at 375, it later candidly acknowledged in *Ex parte Bigelow*, 113 US 328, 5 S Ct 542, 28 L Ed 1005 (1885), "It may be confessed that it is not always very easy to determine what matters go to the jurisdiction of [the district] court so as to make its action when erroneous a nullity."

*Bain*, which this court followed in *Huffman*, employed similar reasoning. The Court explained in *Bain* that the district court had amended an indictment to remove what it erroneously had perceived was a superfluous phrase. 121 US at 5-11.[9] The Court concluded that the erroneous amendment did not merely result in a defective indictment; it resulted in "no indictment" at all. *Id.* at 13. The Court reasoned that, even though the district court "would have [had] jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment." *Id.* Because the district court had no "jurisdiction *** [or] right to proceed," the error was cognizable on federal habeas. *Id.*[10]

---

[9] Most of the Court's discussion in *Bain* focused on whether the district court had erroneously amended the indictment. 121 US at 5-11. To paraphrase the indictment in *Bain*, it initially alleged that the petitioner had intended "to deceive A and B." *See id.* at 4. On the government's motion, the district court deleted the reference to A so that the indictment, as amended, alleged that the petitioner had intended to deceive B. *Id.* at 5. The Court held in *Bain* that not only was the reference to A not superfluous but that deleting it meant that the amended indictment was "no indictment" at all and the district court lacked jurisdiction to try the petitioner for deceiving B. *Id.* at 13.

[10] Another indictment case preceded *Bain*. *See Ex parte Wilson*, 114 US 417, 5 S Ct 935, 29 L Ed 89 (1885). The primary question in *Wilson* was whether possessing a counterfeit federal security was an "infamous crime" that, under the Fifth Amendment, could be charged only by a grand jury presentment or indictment. *Id.* at 423-29. Having determined that it was and that the Fifth Amendment applied, the Court stated, in a sentence, that the district court "exceeded its jurisdiction" in sentencing the petitioner to a penitentiary. *Id.* at 429. As a result, the petitioner could seek federal habeas relief.

In 1867, Congress authorized persons held in state custody to petition for a federal writ of habeas corpus. The Habeas Corpus Act of Feb 5, 1867, ch 28, § 1, 14 Stat 385. Persons convicted of crimes in state court could, as a general rule, appeal to a state appellate court to correct any errors that might have led to their conviction. Marc M. Arkin, *Rethinking the Constitutional Right to a Criminal Appeal*, 39 UCLA L Rev 503, 527 (1992). As a result, many of the early federal habeas cases arising out of state convictions focused on whether persons held in state custody had to exhaust their state remedies before seeking federal habeas relief and what deference, if any, a federal court owed a state court's resolution of federal issues. *See, e.g.*, *Ex parte Royall*, 117 US 241, 6 S Ct 734, 29 L Ed 868 (1886).

For the most part, the substantive grounds for reviewing state convictions on federal habeas corpus initially paralleled those for reviewing federal convictions. However, in 1915, the Court began expanding the grounds for issuing a federal writ of habeas corpus to review state and federal convictions. *See Frank v. Magnum*, 237 US 309, 327, 35 S Ct 582, 59 L Ed 969 (1915) (due process violation for trial dominated by mob violence); *accord Johnson v. Zerbst*, 304 US 458, 467-68, 58 S Ct 1019, 82 L Ed 1461 (1938) (waiver of counsel). Initially, the Court characterized the new grounds for issuing the writ as ones that deprived a court of jurisdiction and, as a result, concluded that those grounds were cognizable on federal habeas. *See Johnson*, 304 US at 467-68; *Frank*, 237 US at 327.

In 1942, the Court recast the reasoning in *Johnson*, decided four years earlier, and explained that a petitioner need not show that an essentially identical issue was a jurisdictional defect in order for it to be cognizable on habeas. *See Waley v. Johnson*, 316 US 101, 104-05, 62 S Ct 964, 86 L Ed 1302 (1942) (per curiam) (coerced guilty plea). The Court reasoned that, when the facts relied on to establish a federal constitutional violation "are dehors the record and their effect on the judgment was not open to consideration and review" on direct appeal, "the use of the writ in the federal courts to test the constitutional validity of a conviction for a crime is not restricted to those cases where the judgment of conviction is void for want of jurisdiction of the trial

court to render it." *Id.* Rather, federal habeas jurisdiction extends to "those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving [the petitioner's] rights." *Id.* at 105.

In 1953, less than one year after this court issued its decision in *Huffman*, the Court effectively eliminated many of the restrictions on federal habeas corpus review of state criminal convictions. *See Brown v. Allen*, 344 US 443, 73 S Ct 397, 97 L Ed 469 (1953).[11] As the decision in *Brown* confirmed, a writ of federal habeas corpus is available when a criminal judgment is based on a federal constitutional error, without regard to whether the error can be recast as jurisdictional.

In the federal courts, the longstanding common-law rule that a federal writ of habeas corpus was available only if a court lacked jurisdiction over the subject or the person was "softened by a long process of expansion of the concept of a lack of 'jurisdiction,'" in large part as a result of a federal criminal defendant's inability initially to appeal his or her conviction. Henry M. Hart, Jr., *Foreword: The Time Chart of the Justices*, 73 Harv L Rev 84, 104 (1959). Jurisdiction, as the federal courts used that term in the late nineteenth century to determine whether an issue was cognizable on federal habeas, bore little resemblance to the concept of subject matter jurisdiction. As another commentator explained,

> "Once the concept of 'jurisdiction' is taken beyond the question of the court's competence to deal with the class of offenses charged and the person of the prisoner, it becomes a less than luminous beacon. How is one to tell which errors cause a court to lose jurisdiction and which do not, which render a judgment void and which do not?"

Bator, 76 Harv L Rev at 470-71 (footnotes omitted).[12]

---

[11] We say "effectively" because the majority decision in *Brown* is somewhat opaque. However, the decision has been viewed as removing many, although not all, common-law limitations on federal habeas review of state and, by extension, federal convictions.

[12] Bator sought to cabin the expansion of jurisdiction in the late nineteenth century cases to instances in which a federal conviction was based on an unconstitutional statute or a court had exceeded its authority in imposing a sentence. *See* Bator, 76 Harv L Rev at 471. However, the cases do not

Both Professors Hart and Bator recognized that, as federal habeas corpus evolved in the late nineteenth and early twentieth centuries, the federal courts' use of the term "jurisdiction" was not limited to a court's "competence to deal with the class of offenses charged and the person of the prisoner." *Id.* Rather, they used phrases, such as a "lack of jurisdiction" and its corollary "a void judgment," to express a conclusion that the alleged error was cognizable on federal habeas. That much follows from the contrast between *Johnson*'s obligatory nod at the end of the opinion to "a lack of jurisdiction" to justify issuing a federal writ of habeas corpus and *Waley*'s recognition four years later that a court need not label an essentially identical error as jurisdictional to reach it on federal habeas.

We need not determine the precise contours of the phrases "lack of jurisdiction" or "a void judgment," as the Court used those phrases in *Lange*, *Siebold*, *Snow*, and *Bain*, to resolve this case. It is sufficient to recognize that the Court used those phrases in federal habeas cases in the late nineteenth century to express a conclusion that an issue was cognizable on federal habeas. It follows that *Bain*'s use of the term "jurisdiction" in 1887 and *Huffman*'s repetition of that term in 1952 are best understood as standing only for the proposition that the particular claims raised in those cases were cognizable respectively in federal and state habeas corpus proceedings.

To be sure, a lack of subject matter jurisdiction was one of the issues that was cognizable, as a common-law matter, in state and federal habeas. However, it is difficult to read *Huffman* as holding that a defective waiver deprives a court of subject matter jurisdiction, as opposed to merely opening the door to state habeas. Subject matter jurisdiction cannot be waived. *C. M. H.*, 368 Or at 109; *State v. Goodall*,

---

expressly state those limiting principles, and Bator recognized that the limiting principles he identified did not explain the Court's expansion of "jurisdiction" in *Wilson* and *Bain* to defective indictments. *Id.* In any event, the important point that both Hart and Bator recognized is that, in the context of nineteenth-century federal habeas decisions, the Court used the phrase "a lack of jurisdiction" to describe a class of errors that were cognizable on habeas; it did not use the phrase to describe a limit on the federal courts' competence to deal with the class of offenses charged or the person of the petitioner.

82 Or 329, 331, 160 P 595 (1916); *Evans v. Christian*, 4 Or 375, 376 (1873). We hesitate to interpret *Huffman*, as defendant urges us to do, as holding that a grand jury's probable cause determination is an essential component of a circuit court's subject matter jurisdiction while simultaneously recognizing that that determination can be waived. Those two propositions are antithetical. In our view, the more logical reading of *Huffman* is that this court recognized that an invalid waiver of an indictment will divest a court of authority (but not subject matter jurisdiction) to try a case. As such, the court's lack of authority will be sufficient, as *Huffman* held, to state a cognizable state habeas claim but not sufficient, as defendant argues, to deprive a court of subject matter jurisdiction.

One final contextual clue supports that reading of *Huffman*. In 1931, more than 20 years before *Huffman* followed the rule from *Bain*, the federal courts recognized that the Fifth Amendment right to have a grand jury make a probable cause determination is a personal right that can be waived, like the right to counsel or the right against double jeopardy. *See United States v. Gill*, 55 F2d 399, 402-03 (D NM 1931). In doing so, the federal courts declined to read *Bain* for the proposition that a grand jury's probable cause determination, reflected in an indictment, is a component of a court's subject matter jurisdiction that cannot be waived. *See id*.

Moreover, in 1944, the United States Supreme Court promulgated Rule 7 of the Federal Rules of Criminal Procedure, which permits federal criminal defendants to waive indictment. The commentary to that rule cites *Gill* and thus confirms a more limited understanding of *Bain*. *See* Rule 7, Fed R Crim P (1944) (Commentary); *see also Cotton*, 535 US at 631 (overruling *Bain* "[i]nsofar as it held that a defective indictment deprives a court of [subject matter] jurisdiction").

We accordingly conclude that *Huffman* did not hold that an invalid waiver of an indictment will deprive a court of subject matter jurisdiction. Rather, *Huffman* stands for the more limited proposition that an invalid waiver of an indictment was the kind of error that was

cognizable, as a matter of state common law, in state habeas.[13] And, after the enactment of Oregon's Post-Conviction Hearing Act in 1959, the common-law limitations on state habeas that *Huffman* addressed in 1952 became largely irrelevant. *See Chavez*, 364 Or at 669 (explaining that the 1959 state post-conviction act simplified the procedure for bringing a state collateral challenge to a criminal conviction by replacing state common-law writs, such as habeas corpus and *coram nobis*, with a single statutory cause of action).

## III.   TEXT AND HISTORY OF ARTICLE VII (AMENDED), SECTION 5

Defendant advances an alternative argument. He contends that the text and history of Article VII (Amended), section 5, lead independently to the conclusion that an invalid waiver of a preliminary hearing will deprive a court of subject matter jurisdiction. We address that argument briefly.

### A.   *Text*

Three subsections of Article VII (Amended), section 5, bear on defendant's alternative argument. They provide:

"(3)   Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court

---

[13] As a preface to its consideration of the petitioner's defective waiver argument, *Huffman* cited several state habeas cases that, following the practice in the federal habeas cases, considered whether an error in sentencing, double jeopardy, and the like deprived a court of "jurisdiction." *See* 197 Or at 297. Those cases either held or assumed that the alleged errors were "jurisdictional" and thus were cognizable on state habeas. *See Macomber v. State et al.*, 181 Or 208, 180 P2d 793 (1947) (whether the trial court lacked jurisdiction to sentence the defendant as a recidivist); *Kelley v. Meyers*, 124 Or 322, 263 P 903 (1928) (whether the trial court lacked jurisdiction to impose an allegedly cruel and unusual sentence); *Ex parte Foster*, 69 Or 319, 322, 138 P 849 (1914) (holding that a sentence that differed in kind from one authorized by statute was void but a sentence that exceeded the one authorized by statute was voidable); *Ex parte Tice*, 32 Or 179, 184, 49 P 1038 (1897) (explaining that a claim of double jeopardy deprived a court of jurisdiction to take further action). If defendant were correct that an invalid waiver of an indictment deprives a court of subject matter jurisdiction, as opposed to merely opening the door to state habeas, then presumably the errors considered in those earlier state habeas cases also would deprive courts of subject matter jurisdiction.

with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4)   The district attorney may charge a person on an information filed in circuit court of [*sic*] a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5)   The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing."

Or Const, Art VII (Amended), § 5(3)-(5).

The text of Article VII (Amended), section 5(3)-(5), sets out the procedures for charging a person with a crime punishable as a felony. As defendant acknowledges, those three subsections do not mention jurisdiction. He contends, however, that, because those subsections define the procedures for invoking the court's jurisdiction to decide criminal cases, compliance with those procedures is itself jurisdictional.

Defendant's argument fails to distinguish two separate aspects of Article VII (Amended), section 5(3)-(5). As discussed above, subsections (3) through (5) require both a charging instrument (an indictment or an information) and a check on the district attorney's charging authority (a grand jury's determination of probable cause, a magistrate's determination of probable cause, or a defendant's waiver of that check). Defendant's jurisdictional argument focuses on the former requirement—the presence of a charging instrument—and it echoes our recent reaffirmation in *C. M. H.* that whether a court acquires subject matter jurisdiction can depend on the allegations in a petition or complaint and, by extension, a charging instrument. *See C. M. H.*, 368 Or at 117-19.

Even if we assume that the presence of a charging instrument that alleges the commission of a crime is a necessary component of a circuit court's subject matter

jurisdiction, the difficulty with defendant's textual argument is that there is no dispute that the information in this case alleged that defendant had committed the offense of possessing methamphetamine. Indeed, defendant has not claimed that the information in this case was defective in any respect. *Cf. Terry*, 333 Or at 186 (holding that a defect in a charging instrument does not deprive a court of subject matter jurisdiction). Rather, defendant's argument focuses on a related but separate issue—whether a defective waiver in the constitutionally required check on a district attorney's charging authority will deprive a court of subject matter jurisdiction.

We considered a similar issue in *Figueroa v. BNSF Railway Co.*, 361 Or 142, 390 P3d 1019 (2017). The issue in that case was whether a statute that authorized a plaintiff to initiate litigation by serving the registered agent for an out-of-state defendant gave a state court personal jurisdiction over the defendant. We explained that jurisdiction and the process for initiating litigation address separate issues. We reasoned:

> "Textually, [the statute at issue in *Figueroa*] addresses service, not jurisdiction. Jurisdiction refers to the forum's authority to adjudicate claims against a defendant. Service refers to the process by which a defendant over whom the court has jurisdiction is brought before the court. Both are necessary for a court to issue a binding judgment, but the two concepts are not synonymous."

*Id.* at 146 (citations omitted).

The same reasoning applies here. Subject matter jurisdiction refers to a court's "power to deal with the general subject involved." *Garner*, 167 Or at 675 (internal quotation marks omitted); *accord Terry*, 333 Or at 170 ("Subject matter jurisdiction defines the scope of the proceedings that may be heard by a particular court of law * * *."). Article VII (Amended), section 5(3)-(5), defines how an action over which a circuit court has jurisdiction can be initiated and provides a check on the district attorney's charging authority. To paraphrase *Figueroa*, the question whether the allegations in a charging instrument gave a circuit court subject matter jurisdiction to adjudicate criminal charges is

separate from the question whether the defendant's waiver of a check on a district attorney's charging authority was defective.[14]

### B.   *Context and history*

Technically, only Article VII (Amended), section 5(5), is at issue in this case. Subsection (5), however, authorizes a person to knowingly waive a preliminary hearing in terms that echo, at least in part, those used in subsection (4) for waiving an indictment, and subsection (5) identifies an alternative charging procedure to those set out in subsections (3) and (4). We accordingly address not only the history of Article VII (Amended), section 5(5), but also the text of Article VII (Original) and the various amendments to that article that bear on the three subsections that currently set out the procedure for charging felonies.

### 1.   *Article VII (Original)*

Article VII (Original), section 9 (1859), vested "[a]ll judicial power, authority, and jurisdiction" in the circuit courts unless the constitution or laws vested jurisdiction exclusively in some other court. At the same time, Article VII (Original), section 18 (1859), directed the legislature to provide for a seven-person grand jury and specified how many grand jurors must concur to find an indictment. Original section 18 also provided, however, that the "Legislative Assembly may modify or abolish grand Juries." Or Const, Art VII (Original), § 18 (1859).

The state argues, and defendant does not dispute, that the legislature's authority, under original section 18, to abolish grand juries and provide for a different charging procedure demonstrates that a circuit court's subject matter jurisdiction to hear criminal cases, set out in original section 9, was not dependent on criminal charges being initiated by a grand jury indictment, as opposed to some other

---

[14] As explained above, there is no dispute that, in this case, a constitutionally permissible charging instrument alleged that defendant had committed a criminal offense. This case accordingly does not require us to decide whether the complete absence of a charging instrument would present a jurisdictional problem.

charging instrument.[15] The question accordingly becomes whether the various amendments to Article VII demonstrate an intent to depart from that original understanding.

## 2.    *The 1908 amendment*

The 1899 Legislative Assembly eliminated the requirement that crimes be charged by a grand jury indictment and permitted crimes to be charged solely by a district attorney's information. *See State v. Haji*, 366 Or 384, 412, 462 P3d 1240 (2020).  In 1908, the people responded by amending Article VII (Original), section 18, to require that "any crime or misdemeanor" be charged in circuit court by a grand jury indictment. *See* Or Laws 1909, p 12. As amended in 1908, Article VII (Original), section 18, provided:

> "No person shall be charged in any Circuit Court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury. *Provided, however*, that any District Attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form."

*Id*. (emphasis in original).

The proponents of the measure explained that district attorneys had unchecked power to initiate criminal prosecutions by information and could blacken a person's reputation, even when the district attorney did not intend to pursue the charges alleged in the information. Official Voters' Pamphlet, General Election, June 1, 1908, 116. The proponents reasoned that, left unchecked, district attorneys could initiate a criminal proceeding "to serve some political purpose, private revenge or the scheme of a ring hostile to the victim. It is un-American. It is too much like the despotism of Russia and it is too much power to be vested in the hands of any one man." *Id*. They noted that, in England, "no man can be brought to trial save on an indictment by a grand jury. The fathers of our country were careful to write

---

[15] Of course, a failure to follow statutorily or constitutionally required charging procedures can result in an error that leads to the case being dismissed by the trial court or, if the issue were properly before an appellate court, the judgment being reversed on appeal. Our focus here is only on whether the error deprives a court of subject matter jurisdiction.

that into the United States Constitution, but it is not yet an article of the State Constitution." *Id.* at 116-17. The proponents warned that, without a state constitutional grand jury requirement, the "time will inevitably come when wealth and great interests will seek to shut the mouth of every man who is against them; and if we may judge the future by the past, the powerful interests are apt to control the political offices, including the district attorney." *Id.* at 117.

Neither the text of the 1908 amendment nor the reasons offered for its adoption suggest that the requirement that a grand jury determine probable cause was viewed as an essential component of a circuit court's subject matter jurisdiction. Rather, the reason for requiring that determination was to check the district attorney's charging authority. The voters may well have understood that some charging instrument was necessary to invoke the circuit court's subject matter jurisdiction; however, nothing in the text or the history of the 1908 amendment suggests that they understood that the check they added—a grand jury's probable cause determination—was an essential component of subject matter jurisdiction.

Defendant argues that the 1908 amendment was modeled on the Fifth Amendment Presentment Clause, and he relies on *State v. Stockfleth/Lassen*, 311 Or 40, 50, 804 P2d 471 (1991), for the proposition that, "when Oregon adopts the statute of another jurisdiction, the legislature is presumed also to adopt prior constructions of that statute by the highest court of that jurisdiction." It follows, he reasons, that, when the voters amended Oregon's constitution in 1908, they should be presumed to have adopted not only the Fifth Amendment Presentment Clause but also the United States Supreme Court's interpretation of that clause in *Bain*.

Defendant's argument is problematic. We have applied the presumption stated in *Stockfleth/Lassen* only when the text of the statute that the Oregon legislature adopted was "virtually identical" to the text of the other jurisdiction's statute. *See Stockfleth/Lassen*, 311 Or at 50 (stating that requirement); *Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 337-38, 245 P3d

81 (2010) (applying that requirement). While the texts of the 1908 amendment to Article VII (Original) and the Fifth Amendment Presentment Clause both draw from the same Anglo-American tradition, their texts could hardly be described as "virtually identical."[16] We thus have little basis for presuming that the voters intended to adopt *Bain*'s holding. Beyond that, as explained above, *Bain* held only that an erroneously amended indictment was a "jurisdictional" issue that was cognizable on habeas. Even if we presume that the voters adopted *Bain* when they amended the Oregon Constitution in 1908, that does not establish that they intended to go beyond that holding and establish that a defective indictment deprives a circuit court of subject matter jurisdiction.

    3.   *The 1910 amendments to Article VII*

In 1910, the voters substantially amended Article VII (Original). The 1910 amendments, however, bear only indirectly on the issue that this case presents. As a result of the 1910 amendments, some sections of Article VII (Original) "were not incorporated into or made a part of [Article VII (Amended)]." *State v. Farnham*, 114 Or 32, 37, 234 P 806 (1925). Those unincorporated sections of Article VII (Original) retained no constitutional force after the 1910 amendments. *Id.* at 37-38. However, as a result of Article VII (Amended), section 2 (1910), the unincorporated sections remained in effect as statutes that could be amended by the legislature. *Id.* at 42.

---

[16] The Fifth Amendment Presentment Clause provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." US Const, Amend V. The 1908 amendment to Oregon's constitution, by contrast, was not limited to "capital, or otherwise infamous crime[s]" but applied to "any crime or misdemeanor defined or made punishable by any of the laws of this State." Or Const, Art VII (Original), § 18 (1908). The only textual limit to the 1908 amendment's application turned on whether the charge was initiated in a "circuit court," as opposed to some other court. *See State v. Langworthy*, 55 Or 303, 314-16, 104 P 424 (1909), *reh'g den*, 55 Or 303, 106 P 336 (1910) (holding that the 1908 amendment did not apply to a misdemeanor charged initially in justice court and appealed to circuit court). Finally, the Presentment Clause permits two types of charging instruments (presentments and indictments) while Oregon's 1908 amendment permitted only indictments. *Cf.* Renée B. Lettow, *Reviving Federal Grand Jury Presentments*, 103 Yale L J 1333, 1334 (1994) (explaining that presentments are charges initiated by the grand jury while indictments are typically initiated by the prosecutor and submitted to the grand jury).

The 1910 amendments, however, did incorporate some sections of Article VII (Original). *See State v. Tollefson*, 142 Or 192, 196, 16 P2d 625 (1932). The incorporated sections of Article VII (Original) were not repealed but remained in effect as parallel, operative constitutional provisions. *See id.* at 196-97. Because Article VII (Amended), section 5 (1910), incorporated Article VII (Original), section 18 (1908), both original section 18 (1908) and amended section 5 remained in effect after the 1910 amendment. *Id.*

4.    *The 1927 amendment*

In 1927, the voters amended Article VII (Original), section 18 (1908), to permit a person to waive indictment. *See* Official Voters' Pamphlet, Special Election, June 28, 1927, 8.[17] When the 1927 amendment was referred to the people, the proponents explained that the amendment was intended "to save time and expense in disposing of the cases of criminals who desire to plead guilty." *Id.* at 9. They observed that, under the then-current system, a person charged with a crime or misdemeanor had to be bound over to the grand jury and await an investigation by that body. *Id.* Moreover, a grand jury investigation could take months to complete, especially in counties with few court terms each year. *Id.* The proponents reasoned that, because most criminal cases were resolved by guilty pleas, requiring grand jury investigations in every case often resulted in unnecessary costs to the counties and unnecessary burdens on witnesses who had to travel to testify before the grand jury. *Id.* The amendment accordingly permitted a person accused of a crime or misdemeanor to waive indictment and be prosecuted on a district attorney's information, as long as the waiver occurred before a circuit court judge and was knowing.

The 1927 amendment requires a charging instrument (either an indictment or an information), but it treats

---

[17] The voters added the following amendment to Article VII (Original), section 18:

"provided further, however, that if any person appear before any judge of the circuit court and waive indictment, such person may be charged in such court with any such crime or misdemeanor on information filed by the district attorney."

*See* Voters' Pamphlet, June 28, 1927, at 8.

the right to a grand jury determination of probable cause as a personal right of a defendant, which a defendant can choose to assert or waive. That is, the amendment does not treat the right to a grand jury's probable cause determination as an essential component of a court's subject matter jurisdiction, which cannot be waived. *See Goodall*, 82 Or at 331 (subject matter jurisdiction cannot be waived); *Evans*, 4 Or at 376 (same). To be sure, the voters could have intended to adopt a constitutional amendment in 1927 that altered the well-established rule that subject matter jurisdiction cannot be waived. But nothing in the text or the explanation for the amendment suggests they intended such a change. The more likely explanation is that the 1908 amendment did not make a grand jury's determination of probable cause a jurisdictional prerequisite, and the 1927 amendment permitting a waiver of that personal right did not conflict with the rule that subject matter jurisdiction cannot be waived.

5.   *The 1958 amendment*

The 1958 Legislative Assembly submitted a proposed amendment to Article VII to the voters. *See* Official Voters' Pamphlet, General Election, Nov 4, 1958, 25. The proposed amendment made two changes to Article VII. First, it authorized the legislature to provide for more than one grand jury in a county to conduct special investigations. *Id.* Second, it repealed Article VII (Original), section 18 (1927), and integrated the provisions in that section into Article VII (Amended), section 5. *Id.*

Most of the discussion in the Voters' Pamphlet focused on the first change. *Id.* at 26-27. The second change received far less attention. The official explanation described the second change as follows: "This measure also rearranges for purposes of convenience and clarity sections of the Constitution dealing with indictments, but makes no change in existing constitutional law other than to allow the use of more than one Grand Jury." *Id.* at 26. The proponents of the measure described the second change similarly. After discussing the first change, they explained:

"The only other change made by this proposition is purely technical. Section 5 of Amended Article VII of the Constitution, as adopted in 1910, was identical with Section

18 of Original Article VII. In 1927 the voters approved an amendment to Section 18 of the Original Article, which had never been repealed. This measure makes the same amendment, allowing waiver of indictment and plea to an information, to Section 5 of the Amended Article VII, and repeals Section 18 of the Original Article, since it then would be completely repetitious."

*Id.* at 27.

Defendant argues that, because the voters repealed Article VII (Original), section 18 (1927), and reenacted Article VII (Amended), section 5, as amended, we should presume that they intended to adopt this court's decision in *Huffman* unless the constitution's wording clearly shows a contrary purpose. Defendant draws that presumption from a 1929 statutory construction case, *Overland v. Jackson*, 128 Or 455, 463-64, 275 P 21 (1929). Whatever the validity of *Overland* in interpreting statutes, we have focused more closely on the history of constitutional amendments in determining the voters' intent in reenacting existing constitutional provisions.

This court explained in *Haji* that, "when the disputed text of an amended constitutional provision consists of text reincorporated from a prior version of the constitutional provision, this court will examine the enactment of that prior version in our effort to determine the meaning of the amended provision." 366 Or at 400. That is, we look initially and primarily at what the provision meant when it was originally enacted. Intervening court interpretations will inform our understanding of the reincorporated provision, but we have not treated them as dispositive. *See State v. Reinke*, 354 Or 98, 109-10, 309 P3d 1059, *adh'd to as modified on recons*, 354 Or 570, 316 P3d 286 (2013) (explaining that this court's prior interpretation of the word "crime" in Article VII (Amended), section 5 (1929), "forms the backdrop against which the 1974 amendment to that article was adopted and informs the meaning of the word 'crime' in the 1974 amendment").

As explained above, the 1927 amendment does not reflect an intent to make a defective waiver of an indictment a jurisdictional issue. And nothing in the history of the 1958

amendment leads to a different conclusion; that is, the history of the 1958 amendment provides no reason to think that the voters understood that, in "rearrang[ing]" the existing terms of Article VII, they were altering the understanding of the 1927 amendment to original section 18. Beyond that, even if we assume that the voters intended to approve *Huffman*'s holding when they amended Article VII in 1958, *Huffman* held only that a defective waiver was a cognizable "jurisdictional" issue in a state habeas proceeding. It did not establish the separate and distinct proposition that a defective waiver of an indictment will deprive a circuit court of subject matter jurisdiction.

### 6. *The 1974 amendment*

In 1974, the legislature referred a proposed amendment to Article VII (Amended), section 5, to the voters. The proposed amendment repealed the then-existing section 5 and replaced it with a new section 5. *See* Official Voters' Pamphlet, General Election, Nov 5, 1974, 13-17. Although the 1974 amendment replaced section 5 in its entirety, it made primarily one substantive change to former section 5. It added a new subsection that authorized an additional procedure for charging felonies.[18] The new subsection provided that, in addition to the existing procedure for charging a felony (a grand jury indictment or an information accompanied by a waiver of indictment), a district attorney could charge a felony by an information accompanied by a preliminary hearing before a magistrate to establish probable cause or by a knowing waiver of that right. *Id.*

The official explanation for the amendment stated that it gave district attorneys an additional, more flexible charging option. *Id.* at 13. It told the voters that the reason for requiring either a preliminary hearing or a knowing waiver was to make certain either that "some disinterested judicial officer (the magistrate) has determined that probable cause exists" or "where [the preliminary] hearing has been waived, to at least insure the reasonable implication that there is probable cause to conclude that a felony has

---

[18] The 1974 amendment changed former section 5 substantively in another respect. As amended, section 5(3)-(5) applies only to felonies while former section 5 applied to "any crime or misdemeanor."

been committed by the accused or the accused would have asked for a hearing." *Id.* Put differently, the explanation made clear that a probable cause hearing before a magistrate and a waiver of that right provide coequal checks on a district attorney's charging authority.

Although defendant argues that the 1974 amendment approved *Huffman*, the only reason that he identifies for that argument is that *Huffman* preceded the amendment. Nothing in the text or history of the 1974 amendment suggests that the voters would have understood that they were approving *Huffman*. Moreover, the 1959 post-conviction act mooted the issue that *Huffman* had decided—whether a defective waiver of a preliminary hearing is cognizable in state habeas. If the voters were aware of *Huffman*, they also presumably would have been aware that the issue that *Huffman* decided no longer mattered. In adopting the 1974 amendment, the voters did not endorse the notion that a defective waiver of a preliminary hearing deprives a court of subject matter jurisdiction.

We note one final contextual clue that bears on defendant's argument. In *Terry*, this court held that, if a defendant has been indicted for a felony, a defective indictment does not divest a circuit court of subject matter jurisdiction. 333 Or at 186. It follows that a defective waiver of an indictment or a preliminary hearing does not divest a circuit court of subject matter jurisdiction either. Although defendant argues that *Terry* is inconsistent with older Oregon cases, we recently observed that, previously, "'judicial opinions sometimes obscure[d] the different meanings [of jurisdiction] by dismissing for 'lack of jurisdiction' without explicitly addressing whether the problem was a lack of subject matter jurisdiction or only a failure of the particular claim.'" *C. M. H.*, 368 Or at 110 (quoting *Arbaugh v. Y & H Corp.*, 546 US 500, 510-11, 126 S Ct 1235, 163 L Ed 2d 1097 (2006); internal quotation marks in *Arbaugh* omitted by *C. M. H.*). So too here.

Our holding today is narrow. In this case, there was a charging instrument and an apparent waiver of a preliminary hearing. Accordingly, we need not and do not decide whether the complete absence of either a charging

instrument or a waiver would be a jurisdictional problem. Rather, the only question that this case presents is whether an invalid waiver of a preliminary hearing deprives a circuit court of subject matter jurisdiction. For the reasons stated above, we hold that it does not. Because defendant did not argue before the trial court that his waiver was invalid, he can raise that issue on appeal only if he comes within an exception to the preservation rule. *See Peeples*, 345 Or at 219. We turn to that issue.

## IV.   EXCEPTIONS TO THE PRESERVATION RULE

Ordinarily, before an issue may be raised and considered on appeal, it must first be presented to the trial court. *Peeples*, 345 Or at 219. There are, of course, exceptions to that rule. As we noted in *Peeples*, "plain error" is the primary exception. *See id.* at 219-20. The court also noted another exception. It observed that a right may not be subject to the preservation requirement "due to the unique nature of the right itself." *Id.* at 220-21 (citing *State v. Barber*, 343 Or 525, 530, 173 P3d 827 (2007)). On review, defendant relies on the latter exception while he relied on the former exception in the Court of Appeals.

We begin with the latter exception, which this court discussed in *Barber*. The defendant in *Barber* had not signed a written jury waiver, as Article I, section 11, of the Oregon Constitution requires. This court explained that the "special peculiarity" of the state constitutional right to a jury trial in criminal cases derives from the fact that the Oregon Constitution not only recognizes the right but also "specifies the only way in which the right may be lost—*viz.*, by a written waiver executed before trial commences, together with trial court consent." *Barber*, 343 Or at 529. The court concluded that, unless both those formal requirements are satisfied, a criminal defendant will not lose the right to a jury trial and may object, for the first time on appeal, to having been tried by the court. *Id.* As this court "emphasize[d]," however, in *Barber*, requiring a written waiver of a criminal jury trial is "unique." *See id.* at 530 (using the word "unique" three times in the same sentence to describe the right and the procedure for waiving it).

In this case, defendant argues that, because the text of Article VII (Amended), section 5(5), specifies that a waiver of a preliminary hearing must be "knowing," the right to a preliminary hearing is one of those unique rights that, under *Barber*, may be raised for the first time on appeal. Article VII (Amended), section 5(5), however, does not specify either the procedure for waiving the right to a preliminary hearing or that only a written waiver will suffice, as the constitutional text at issue in *Barber* did. Rather, the text of section 5(5) specifies only that the waiver be "knowing." *Compare* Or Const, Art VII (Amended), § 5(5) (requiring that the waiver of a preliminary hearing be knowing), *with* Or Const, Art VII (Amended), § 5(4) (requiring that the waiver of an indictment be both knowing and occur before a circuit court judge). Indeed, a knowing waiver is required for many personal constitutional rights, which do not come within the class of unique rights identified in *Barber*. *See Barber*, 343 Or at 529-30 (distinguishing the right to a criminal jury trial, which will not be lost without a written waiver, from other personal constitutional rights). We are not persuaded by the parties' briefing that there is a textual basis for including waivers of the right to a preliminary hearing in the "unique" class of rights identified in *Barber*.[19]

Alternatively, defendant argued in the Court of Appeals that his waiver of his right to a preliminary hearing was not knowing and, as such, was a plain error that the Court of Appeals should reach. It is unclear from defendant's briefing in this court whether he believes we should review the validity of his waiver under the plain error doctrine. However, even if he does, we conclude that the issue is more appropriately left to the Court of Appeals. As this court repeatedly has recognized, even when a trial court's error is plain, the Court of Appeals retains discretion to decide whether to reach it. *See, e.g.*, *Peeples*, 345 Or at 219-20 (discussing factors that bear on whether the Court of Appeals should exercise its discretion to reach a plain error); *Ailes*

---

[19] There may be circumstances specific to the waiver in this case that bear on whether it should be reviewed under the plain error doctrine or perhaps comes within the class of constitutional rights that, under *Barber*, do not need to be raised below. Defendant's brief on review does not address those circumstances, and we leave that issue for another day.

*v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (same).

In this case, the Court of Appeals never decided whether it should exercise its discretion to reach the validity of defendant's waiver. Its conclusion that the error was jurisdictional foreclosed its consideration of that discretionary issue. We also note that the briefing before this court has appropriately focused on whether the error was jurisdictional, not on whether it was the type of error that the Court of Appeals should exercise its discretion to reach under the plain error doctrine. In these circumstances, we think that the better course is to reverse the Court of Appeals decision and remand this case to the Court of Appeals so that it can consider, in the first instance, whether it should exercise its discretion to reach the validity of defendant's waiver under the plain error doctrine. *State v. Vanornum*, 354 Or 614, 631, 317 P3d 889 (2013) (taking the same approach).

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.